**2014-1552**

# United States Court of Appeals
# For The Federal Circuit

ACTION STAR ENTERPRISE CO. LTD.,
a Taiwanese corporation,

*Plaintiff - Appellant,*

v.

KAIJET TECHNOLOGY INTERNATIONAL LIMITED,
a Georgia corporation,

*Defendant – Appellee,*

and

DOES, 1 to 10 inclusive,

*Defendants.*

Appeal from the United States District Court for the Central District of California in case no. CV 12-08074, Judge Beverly Reid O'Connell.

## CORRECTED OPENING BRIEF FOR ACTION STAR ENTERPRISE

John A. Dragseth
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN  55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Jen-Feng (Jeff) Lee
LT PACIFIC LAW GROUP LLP
17800 Castleton Street, Suite 560
City of Industry, CA  91748

Christopher Dillon
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878
Tel: (617) 542-5070
Fax: (617) 542-8906

**October 20, 2014**              *Attorneys for Action Star Enterprise*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for the appellant, Action Star Enterprises Co. Ltd., certifies the following:

1.    The full name of every part or amicus represented by me is:

     Action Star Enterprises Co. Ltd.

2.    The name of the real party in interest represented by me is:

     N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

     N/A

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

     Fish & Richardson P.C.:   Christopher Dillon and John Dragseth
     LT Pacific Law Group LLP:  Jen-Feng (Jeff) Lee

Date:  October 20, 2014            */s/ John A. Dragseth*
                                 Signature of counsel

                                 John A. Dragseth
                                 Printed name of counsel

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

STATEMENT OF RELATED CASES ...................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE AND FACTS ........................................3

I.   Action Star's '535 Patent—Toggling Between Computers by
     Operating a Switch on a Mouse................................................3

II.  The Accused KaiJet Products – Inducing Infringement by Way
     of Instructions to Perform the Patented Method.............................5

III. This Litigation—Action Star's Pursuit of Carefully Limited
     Claims .....................................................................................7

SUMMARY OF THE ARGUMENT ......................................................11

ARGUMENT ............................................................................................12

I.   Standard of Review...................................................................12

II.  The District Court Erred in Finding a Lack of Evidence of
     Inducement as a Matter of Law ...............................................13

III. The District Court's Award Under Section 285 Must Be
     Vacated ...................................................................................20

     A.   The Section 285 Award Cannot Stand if Summary
          Judgment Is Vacated .........................................................20

     B.   The District Court Erred by Not Considering All
          Relevant Factors Before Awarding Fees.............................20

     C.   The District Court Erred by Not Tying the Amount of the
          Section 285 Award to the Perceived Wrong .......................26

CONCLUSION .........................................................................................27

CERTIFICATE OF SERVICE ................................................................28

CERTIFICATE OF COMPLIANCE.......................................................29

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) .................................................................. 17, 18

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................ 12

*Arbrook, Inc. v. American Hosp. Supply Corp.*,
  645 F.2d 273 (5th Cir. 1981) ......................................................................... 22

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  406 F.3d 1365 (Fed. Cir. 2005) ..................................................................... 16

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*,
  249 F.3d 1341 (Fed. Cir. 2001) ..................................................................... 16

*eBay, Inc. v. Bidder's Edge*,
  100 F. Supp. 2d 1058 (N.D. Cal. 2000)......................................................... 19

*Fina Oil & Chem. Co. v. Ewen*,
  123 F.3d 1466 (Fed. Cir. 1997) ..................................................................... 13

*Frustere v. Wells Fargo Bank, N.A.*,
  No. 11-6395, 2013 U.S. Dist. LEXIS 89272 (N.D. Cal. 2013)...................... 26

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d [1321,] 1329 [[Fed. Cir. 2010)] .................................................. 16, 17

*Get-A-Grip, II, Inc. v. Hornell Brewing Co.*,
  NO. 99-1332, 2002 U.S. Dist. LEXIS 2589 (E.D. Pa. Feb. 15, 2002)....... 22, 25

*Golden Blount v. Robert H. Peterson*,
  438 F.3d 1354 (Fed Cir 2006) ............................................................... passim

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
  134 S. Ct. 1744 (U.S. 2014)............................................................................ 12

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*iLOR, LLC v. Google, Inc.*,
   631 F.3d 1372 (Fed. Cir. 2011) ................................................................ 12, 20

*Immersion Corp. v. Sony Computer Entm't Am., Inc.*,
   No. C 02-0710 CW, 2005 U.S. Dist. LEXIS 4777 (N.D. Cal.
   Jan. 10, 2005) ......................................................................................... 22

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
   734 F.3d 1352 (Fed. Cir. 2013) ................................................................ 20

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*,
   606 F.3d 1353 (Fed. Cir. 2010) ................................................................ 20

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................ 16

*Malico, Inc. v. Cooler Master USA, Inc.*,
   No. No. C 11-4537 RS, 2013 U.S. Dist. LEXIS 118119 (N.D.
   Cal. 2013) .......................................................................................... 25, 26

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme
   GmbH*,
   603 F.3d 943 (Fed. Cir. 2010) .................................................................. 20

*Michalic v. Cleveland Tankers, Inc.*,
   364 U.S. 325, 81 S. Ct. 6, 5 L.Ed.2d 20 (1960) .................................... 14

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014) .................................................................. 16

*Moleculon Research Corp. v. CBS, Inc.*.
   793 F2d 1261 (Fed Cir 1986) .......................................................... passim

*Octane Fitness LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (U.S. 2014) ...................................................................... 23

iv

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
   457 F.3d 963 (9th Cir. 2006) .......................................................................... 26

*Play Visions, Inc. v. Dollar Tree Stores, Inc.*,
   No. C09-1769 MJP, 2011 U.S. Dist. LEXIS 61336 (W.D. Wash.
   June 8, 2011) ................................................................................................ 23

*Ram Nehara v. California*,
   No.: 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 149088 (E.D.
   Cal. Oct. 16, 2013) ....................................................................................... 25

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
   709 F.3d 1281 (9th Cir. 2013) ..................................................................... 19

*South Corp. v. U.S.*,
   690 F.2d 1368 (Fed. Cir. 1982) ................................................................... 17

*Tokai Corp. v. Easton Enters.*,
   632 F.3d 1358 (Fed. Cir. 2011) ................................................................... 26

*Toshiba Corp. v. Imation*,
   681 F.3d 1358 (Fed. Cir. 2012) ....................................................... 15, 17, 18

*Western Marine Elec., Inc. v. Furuno Elec. Co.*,
   764 F.2d 840 (Fed. Cir. 1985) ............................................................... 22, 25

*White Consolidated Industries, Inc. v. Vega Servo-Control, Inc.*,
   713 F.2d 788 (Fed. Cir. 1983) ..................................................................... 22

*Woods v. Google, Inc.*,
   No. C11-01263 EJD, 2014 U.S. Dist. LEXIS 113149 (N.D. Cal.
   Aug. 8, 2014) ............................................................................................... 26

v

# **TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

**STATUTES**

28 U.S.C. § 1295(a) .................................................................... 1

28 U.S.C. §§ 1331 and 1338 ....................................................... 1

28 U.S.C. § 1927 ................................................................. 11, 20

35 U.S.C. § 116 ........................................................................ 13

35 U.S.C. § 271(b) .............................................................. 13, 14

35 U.S.C. § 285 ................................................................. passim

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court or any other court that will be affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338. On May 16, 2014, the district court entered final judgment granting summary judgment of non-infringement and also entered judgment dismissing KaiJet's counterclaims, which disposed of all parties' claims. [A1-17; A18-19; A1855-56] Appellant Action Star timely appealed the judgment on June 13, 2014. The court awarded attorney fees in an order and judgment dated July 11, 2014. [A20-32; A33-35] Appellant timely appealed from that order in an amended notice of appeal dated July 15, 2014. This Court subsequently consolidated the appeals. Appellant thus believes that this Court has jurisdiction over this appeal under 28 U.S.C. § 1295(a).

## **STATEMENT OF THE ISSUES**

1.      Whether the district court erred in granting summary judgment of no inducement where KaiJet's product has an enabled infringing mode, KaiJet provides its customers with instructions for carrying out that mode, and Action Star sought merely to enjoin such inducing activity?

2.      Whether the district court's award of attorney fees and costs cannot stand, given that (a) Action Star's infringement position was wholly meritorious, and KaiJet is not properly a prevailing party; (b) the position was sufficiently well-grounded in law in any event; (c) the award was premised on a single discovery transaction but the fees were awarded for the entire case despite an explicit finding that there was no bad faith; and (d) the proper measure of the award, if any, should have been tied to fees incurred dealing with the single good-faith discovery transaction?

## STATEMENT OF THE CASE AND FACTS

This appeal presents the issue of whether a patentee can obtain an injunction when a multi-mode product is sold with the infringing mode as the default, and with instructions to perform the infringing mode, even where there is no direct evidence that a particular end user followed the instructions. Action Star submits that an injunction to bar enablement of and promotion of the infringement mode is warranted, and that the district court's grant of summary judgment was thus reversible error. In any event, the district court's fee award for the cost of the entire case was unconnected to the harm on which the district court based the award—a single failure to timely disclose one piece of infringement evidence. Either the district court should have balanced that factor against all the other positive factors in the case, which it did not do, or should have awarded a fraction of the fees under a more appropriate provision such as Federal Rule of Civil Procedure 37, which it did not do and was not asked to do.

## I.    Action Star's '535 Patent—Toggling Between Computers by Operating a Switch on a Mouse

Action Star's U.S. Patent 8,099,535 [A36-41] is directed to a mouse-controlled method of toggling between multiple computers that a user operates with a single keyboard and mouse, and perhaps reviews with a single video monitor. This is known as a KVM or KM environment, where the letters represent the devices of Keyboard, Video, and Mouse. [A1] For example, a worker in a

3

company's IT department may need to monitor a number of computer systems during a workday, and a KVM/KM switch can allow her to avoid cluttering her desk with hardware, and also avoid being confused about which keyboard, video monitor, and mouse is currently active. As the district court noted: "a KVM switch is in essence a box that contains internal circuitry and various data ports into which cables from the keyboard, video monitor, and mouse connect." [A2][1] The following figure from the district court's opinion shows the general arrangement of a three-computer system under control of a KVM switch [A3]:



The invention of the '535 patent addresses a way to instigate the toggling between computers. Early KVM switches were switched via a button or knob on a physical switch device that a user would press or turn. [A4] Later systems

---

[1] KM switches handle just the keyboard and mouse—i.e., the inputs, but not the output—so that a user can continuously see all of the computers under her power via multiple monitors, but may switch to a particular computer she wants to control at a given time. This brief refers only to KVM switches for simplicity.

allowed a user to click on an icon shown on a display so as to toggle between computers. [*Id.*] The '535 patent "obviate[es] the need for a traditional KVM switch box" [*Id.*] by monitoring the direction that a user manipulates a switch on the user's computer mouse. As the district court noted, the methods recited in claims 1 and 6 of the patent:[2]

> instruct the user to select a first computer to operate "by controlling the switch disposed on the mouse into a first direction corresponding to the use of the first computer host." 535 Patent 4:44–46, 5:34–36. If the user desires to use a second computer, the methods instruct the user to "control[] the switch disposed on the mouse into a second direction corresponding to the use of the second computer host." *Id.*

[*Id.*] Thus, for example, a user can slide her mouse one direction to switch to computer A, and another direction to switch to computer B (thus triggering switches on the mouse that track the motion and cause the toggling).

## II.    The Accused KaiJet Products – Inducing Infringement by Way of Instructions to Perform the Patented Method

Action Star accuses KaiJet in this suit of inducing and contributing to infringement through sale of its "Wormhole" products with instructions on how to perform the patented directional switching method. [A74-87, ¶10 (First Amended Complaint)] In the District Court's words: "The [Wormhole] products permit a data connection between two computers through which files may be shared. They

---

[2] The claims are very similar. They differ largely in that claim 1 is directed to a KVM switch, while claim 6 is directed to a KM switch. [*Id.*]

also permit a user to operate the keyboard and mouse of one computer to control a different computer to which it is connected through [KaiJet's] product"—so they "effectively function[] as a KM switch."  [A6 (internal citation omitted)]  As shown in the figures here, the switch is implemented by a cable that can connect the two computers via their USB ports [*id.*]:



The KaiJet products permit toggling in four ways—the first of which performs the methods of the '535 claims:  (1) moving the cursor to the edge of the screen of the computer that is currently activated (which is movement in a particular direction that is sensed by the mouse); (2) clicking the mouse's middle button; (3) clicking a specified area of the screen of the computer that is currently activated; and (4) using a "hotkey" command such as "Alt +s."  [A7]

Importantly, the documentation that KaiJet ships with the products specifically instructs buyers how to perform the infringing method.  The KaiJet User Manual instructs users to select the option of moving off the edge of the

screen with a mouse in order to toggle computers—a directional movement with a

switch on the mouse that tracks motion of the mouse:



[A1628; A1118]  That mode of operation is fully enabled in the shipped product

and is the default mode for the product.    [A1108-1220; A1286-1295; A1142;

A1144; A1290; A1634-36; A1610-13; A1623-33; A1627]

### III.    This Litigation—Action Star's Pursuit of Carefully Limited Claims

Action Star brought this suit September 17, 2012, asserting, inter alia,

KaiJet's indirect infringement of the '535 patent.    Action Star amended its

complaint on December 5, 2012, specifically adding reference to method claims 1

and 6 as being the infringed claims of the patent—a quick step to limit the scope of

the litigation.[3]   [A74-87]   In response to interrogatories, Action Star identified

infringement of claim 1 as follows, and claim 6 in a similar manner:

> The Wormhole JUC#100/200/400 product, **when used on a KVM system with two hosts (PC1 and PC2)**, will be connected to a first host PC1, and then connected to a second host PC2, causing the following steps to be executed as described:  [following with a list of how each step of the method claim is carried out by the product in use].

[A926, A993-96]  Thus, Action Star identified narrowly what the case was about—

infringement by the use of three particular Wormhole products by two claims of

the '535 patent.

Action Star also was candid about what the case was not—Action Star

avoided typical evasiveness in discovery responses by making a number of

admission to narrow the scope of the case.  For example, Action Star admitted that

the products, standing alone, cannot infringe the method claims.   [A1453-65]

Action Star also admitted that the mere sale of the products was not a direct

infringement.  [*Id.*]  Action Star admitted that certain references were prior art,

thereby allowing KaiJet to avoid having to prove the prior art status of the

references.   And Action Star admitted that it had no evidence that KaiJet knew

about the patent before Action Star sent cease & desist letters, in addition to

admitting a number of other facts that narrowed the issues in the case. [*Id.*]  Action

---

[3] Action Star's precise wording was that KaiJet "enabled and contributed to the infringement of the 535 patent," and the district court recognized this in context as referencing inducement to infringe and contributory infringement.

Star also noted that it was relying on direct infringement by "the consumers/buyers of KaiJet's products"—indicating that the evidence of such direct infringement would be in the control of KaiJet.  [A1031]  And Action Star admitted that it had no evidence of a specific particular direct infringement.  [A1453-65]

Under the belief that Action Star's admission about having no evidence of a specific particular direct infringement was dispositive, KaiJet moved for summary judgment on that ground and others on February 14, 2014.  Action Star responded by pointing to the KaiJet documentation that induces customers to perform the patented method.  [E.g., A1108-1220; A1286-1295; A1142; A1144; A1290; A1634-36]  Action Star also provided a declaration from the inventor (Mr. Cheng) explaining how his patent and the accused products operate, with reference to the instructions KaiJet provides that instruction users how to infringe.  [A1634-44]  Mr. Cheng said that he used the software, and that upon initialization of the software on the two computers, he was able to switch computers using the method of moving the mouse in particular directions.  [A1634-36]

As yet additional evidence of direct infringement, Action Star submitted a YouTube video showing operation of the products in an infringing manner.  Action Star also provided a declaration from an Action Star branch manager (Mr. Andy Lee) discussing the YouTube video, Action Star's products, and functionality common to the Action Star and KaiJet products; and a declaration of Action Star

9

attorney Jeff Lee attaching materials that included communications between the parties and screen shots of the YouTube video.  [A1476-79; A1603-09]

Action Star had in the meantime clarified that it was seeking only injunctive relief, and not damages.  [A1809, A1820-21]  Therefore, the germane issue was what inducing actions KaiJet should stop performing in the future, rather than a more complex question such as quantification of the number of infringements and the amount of damages owed to Action Star.

The district court was unmoved by the evidence of KaiJet's inducement. Rather, at KaiJet's urging, the district court held that, to establish direct infringement as the basis for an inducement claim, Action Star would need to point to particular specific instances of direct infringement, even in this setting of summary judgment (where the standard of proof is particularly low) and in the context of seeking an injunction (where the focus is on possible future activity rather than past actual infringements).  [A12-14]  As a result, the district court granted summary judgment of noninfringement.[4]

The district court next heard KaiJet's motion for attorney fees and costs.  In granting that motion under 35 U.S.C. § 285, which is limited to "exceptional cases" and permits awards only to the "prevailing party," the district court centered

---

[4] The district court also granted summary judgment of no contributory infringement, which is not on appeal.  Moreover, the district court found moot KaiJet's argument that the claims were invalid for indefiniteness.  [A1856]

10

its reasoning on Action Star's use in summary judgment of the YouTube videos it had not previously produced.  [A28-29]  But the court's award was not limited just to fees incurred for dealing with the YouTube videos, and instead covered fees for the entire case.  [A29-32]

The district court declined to award sanctions under 28 U.S.C. § 1927, finding that Action Star's counsel conducted a pre-filing investigation and acted in good faith, without an intent to harass, despite the district court's view that the action was reckless, though not frivolous (which was premised on the district court's belief that the law required Action Star to point to a particular specific direct infringer).  [AA25-26]  This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court erred by applying too strict a standard for proving inducement of infringement to get past summary judgment.  The district court incorrectly believed that a plaintiff must present evidence of specific direct infringements, when in fact this Court has found sufficient evidence of direct infringement from sales of products enabled to infringe along with instructions guiding buyers in the infringement—and without any direct evidence of a particular specific infringer.  A requirement to show a particular past direct

infringer is particularly off-base in situations such as this, where only an injunction for future activities, and not damages for past activities, was sought.

Because the district court's understanding of the law was wrong and Action Star presented adequate circumstantial evidence, the summary judgment should be vacated.  With the summary judgment vacated, KaiJet is no longer the prevailing party, and the award of fees must also be vacated.  Moreover, the district court erred in using a discovery error on a single part of the case as a basis for fees across the entire case under Section 285.  The fee award should therefore be vacated for these reasons also.

## ARGUMENT

### I.  Standard of Review

Summary judgment is reviewed wholly *de novo*, and should be granted only after making all reasonable inferences in favor of the non-movant, and determining that no reasonable jury could find for the non-movant.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  An award under Section 285 is reviewed for abuse of discretion.  *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1749 (U.S. 2014).  An abuse of discretion exists when the court's exercise of its discretion was premised on an underlying error of law. *iLOR, LLC v. Google , Inc.,* 631 F.3d 1372, 1376 (Fed. Cir. 2011).

## II. The District Court Erred in Finding a Lack of Evidence of Inducement as a Matter of Law

Inducement to infringe is governed by 35 U.S.C. § 271(b), which places no specific requirements on the form of evidence used to prove inducement:

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

The Court with similar statutory language has declined to set a high hurdle when the statute itself sets no particular level of proof. *See Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (adopting a low hurdle for co-inventorship, given that 35 U.S.C. § 116 sets no particular lower limit). Naturally, inducement to infringe requires "infringement" as a predicate, but this Court's law has long recognized the practical challenges of providing direct evidence of the direct infringements, which would require in many instances tracking down customers who are not part of the suit, a task that is particularly difficult for infringement activities that occurred long in the past.

This Court has, therefore, repeatedly allowed patentees to rely on *circumstantial evidence* of direct infringement—often when that evidence is in the form of products enabled to infringe that are sold with documentation that explains how to perform the patented process or create the patented item. For example, in *Moleculon Research Corp. v. CBS, Inc.*, the invention was a method of solving a Rubik's Cube. This Court affirmed a judgment of inducement of infringement,

13

citing documentation for solving the puzzle distributed by the defendant, and

without requiring any indication about a particular user who had followed the

documentation to solve the puzzle.  In this Court's words:

> The district court held that Moleculon had met its burden of showing infringement under section 271(b) with circumstantial evidence of extensive puzzle sales, dissemination of an instruction sheet teaching the method of restoring the preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the puzzle. [¶] If CBS is arguing that proof of inducing infringement or direct infringement requires direct, as opposed to circumstantial evidence, we must disagree. It is hornbook law that direct evidence of a fact is not necessary. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S. Ct. 6, 10, 5 L.Ed.2d 20 (1960). We see no clear error in the court's finding of infringement under section 271(b) with regard to the 2 x 2 x 2 pocket cube versions."

793 F2d 1261, 1272 (Fed Cir 1986).  Adequate evidence was thus found in

circumstantial evidence in the form of a product capable of infringing and

instructions for how to infringe.  No direct evidence of an actual infringer was

required.

Similarly, in *Golden Blount v. Robert H. Peterson*, 438 F.3d 1354 (Fed Cir

2006), the patent related to an assembled burner set for a gas fireplace.  The

defendant sold only disassembled sets, and thus did not directly infringe.  But this

Court affirmed a bench trial finding inducement because defendant's instructions

showed how to assemble the burners into the infringing form.  *Id,* at 1363-64.

Again, the Court found sufficient evidence of direct infringement to support a

14

finding of contributory infringement (a more rigorous standard than inducement) without requiring any evidence of a particular customer actually assembling the burner set in the infringing manner. It did not matter that the device could be assembled in a noninfringing way contrary to the instructions.

Even where this Court has emphasized that a patentee must show evidence "of at least one infringer," it has allowed such evidence to be circumstantial in the form of sales of a product that can infringe, along with documentation that describes how to infringe. In *Toshiba Corp. v. Imation*, 681 F.3d 1358 (Fed. Cir. 2012), the patent covered DVDs having a particular pattern burned into them. This Court found that customers of the defendant could burn their DVDs in two modes—one of which resulted in direct infringement and another that did not. But the defendant, according to the Court, instructed use of the infringing mode. The district court granted summary judgment because there was no evidence any end user had used the infringing mode. This Court reversed, even though the patentee never identified a particular user who had used the infringement-producing mode—and even though the Court stated that "[c]ircumstantial evidence must show that at least one person directly infringed an asserted claim during the relevant time period." In short, the *Toshiba* panel, consistent with the earlier *Moleculon* and *Golden Blount* panels, recognized that the evidence of a specific direct infringement could come from circumstantial evidence in the form of

products that can infringe that are sold with documents explaining how to infringe, and did not require direct evidence that named a particular direct infringer.[5]

The district court's grant of summary judgment here was premised on its belief that the relevant law was to the contrary of *Moleculon* and *Golden Blount*, and its misreading of other decisions by this Court. Specifically, the district court reasoned:

> Evidence of how consumers are likely to use a product or evidence of what a product is capable of doing does not establish direct infringement. *See Fujitsu [Ltd. v. Netgear Inc.]*, 620 F.3d [1321,] 1329 [(Fed. Cir. 2010)]. Indirect infringement must be based on evidence of direct infringement, which must be proved by evidence of "specific instances of direct infringement." *Id.*

[A16] The district court's reliance on *Fujitsu* was misplaced, however, as was its interpretation of the passage it quoted from *Fujitsu*. First, *Fujitsu* cannot be read

---

[5] *See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1323 (Fed. Cir. 2009) (substantial evidence supported a verdict of indirect infringement wherein the infringer designed its products to practice the claimed invention and instructed its customers to use the accused product in an infringing way); *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341 (Fed. Cir. 2001) (product manual instructed customers to use product so as to meet the patented limitation, thereby constituting an act of inducement); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1377 (Fed. Cir. 2005) (finding "strong circumstantial evidence" that users directly infringed a patent, including both testimony regarding the intended infringing design and sales literature instructing customers to follow an accused method); *cf. Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014) (affirming district court's conclusion that declaratory judgment jurisdiction existed because "providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement.").

for the proposition that a particular specific direct infringer must be pointed to in order to establish a direct infringement, because *Fujitsu* could not overrule the earlier decisions in *Moleculon* and *Golden Blount*, which found substantial evidence of direct infringement without any such direct evidence pointing to a particular infringer.  *See South Corp. v. U.S.*, 690 F.2d 1368, 1370 & n.1 (Fed. Cir. 1982).

Just as relevant, *Fujitsu* was a special case whose facts differ in an important manner from those here.  In particular, the *Toshiba* court recognized that the *Fujitsu* product had the relevant feature disabled:

> Unlike this case, however, the infringing option in *Fujitsu* was disabled by default, and the relevant standard and user manuals simply described how to use the product in an infringing manner. We held that the evidence in *Fujitsu* showed that the device was "capable of" infringing but did not suggest that users actually used it in an infringing way.

*Toshiba*, 681 F.3d at 1365.  Here, as in *Toshiba*, the relevant feature was enabled and turned on and could readily be employed by a user following the instructions in KaiJet's manual.  [A1108-1220; A1286-1295; A1142; A1144; A1290; A1634-36]  The evidence established, in fact, that KaiJet's products shipped with the infringing feature enabled as the default mode of operation.  [*Id.*]

The district court here also relied centrally on the panel decision in *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307 (Fed. Cir. 2007), as another case supposedly requiring that a particular direct infringer be named or pointed to.

17

But again, that panel decision cannot and did not overrule *Moleculon* and *Golden Blount*, and the *Toshiba* court again explained why *ACCO* found no infringement:

> In *ACCO*, there were instructions describing the infringing use and different instructions describing the non-infringing use. ***The products in ACCO, however, were sold only with instructions describing the non-infringing use***.

*Toshiba*, 681 F.3d at 1365-66.  In sharp and critical distinction, the instructions from KaiJet specifically tell customers how to carry out the use that would infringe the '535 patent—they are not non-infringing instructions.  In sum, this case is controlled by *Moleculon*, *Golden Blount*, and *Toshiba*, and differs from the special facts present in *Fujitsu* and *ACCO*.[6]

Furthermore, this is a particularly apt case for the application of the flexible and permissive rule from *Moleculon*, *Golden Blount*, and *Toshiba* because Action Star seeks only an injunction here, and not damages.  [A1820-21]  It is well-established throughout tort law that a plaintiff need not prove that a tort has

---

[6] Even if one accepts the district court's position that a particular user must be pointed to, Action Star showed use of the product according to its instructions in the Cheng declaration, and his statement that consumers would operate the product in the same manner.  [A1634-37]  The district court dismissed this evidence because it was not technically an "infringement" since Mr. Cheng was an employee of the patentee (and thus presumably licensed) and outside the U.S. at the time.  [A14]  Action Star submits that this Court's law, even if interpreted narrower than in *Moleculon*, *Golden Blount*, and *Toshiba*, is not so inflexible, and is simply looking for a particular infringement as a mechanism to establish that the accused product actually carries out the steps of the claim when it is used as instructed, so as to make reasonable the conclusion that consumers who buy the product will use it to infringe.

occurred in the past in order to enjoin commission of the tort in the future. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) ("[T]he injury need not have been inflicted when application for an injunction is made or be certain to occur. . . .  Requiring a showing of actual injury would defeat the purpose of the preliminary injunction, which is to prevent an injury from occurring.") (citation omitted); *see also eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1071 (N.D. Cal. 2000) (issuing a preliminary injunction because failure to do so would likely encourage others to trespass, "potentially" to the point of denying effective access to plaintiff's customers); *see also* Restatement (Second) of Torts § 933 cmt. (1)(b) ("[A] common method of proving a threat of a future tort is by proving a past tort under conditions that render its repetition or continuance probable. It is not necessary, however, to prove past wrong."). Indeed, a requirement to point to a particular ***past infringer*** could be relevant only for computing damages, and not for enjoining future activity—e.g., removing the infringing mode of operations and the instructions that tell customers how to infringe.  Where there is no need to quantify damages, as here, such additional proof is not necessary under the law.

For each of these reasons, the summary judgment of noninfringement should be vacated and the case remanded.

### III.  The District Court's Award Under Section 285 Must Be Vacated

#### A. The Section 285 Award Cannot Stand if Summary Judgment Is Vacated

Section 285 provides for the potential award of fees in "exceptional cases" to a "prevailing party":

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

35 U.S.C. § 285.  If this Court vacates the summary judgment, there will be no prevailing party, and the award under Section 285 must also be vacated.  *See iLOR*, 631 F.3d at 1380 (vacating award of attorneys' fees for error on determination of "exceptional" status); *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 966 (Fed. Cir. 2010) (same); *see also Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1360 (Fed. Cir. 2013); *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1365 (Fed. Cir. 2010).

#### B. The District Court Erred by Not Considering All Relevant Factors Before Awarding Fees

In declining to award fees under 28 U.S.C. § 1927, the district court found that Action Star had not "multiplie[d] the proceedings in [the] case unreasonabl[ly] and vexatiously," had not acted in bad faith, and had taken reckless (under the district court's incorrect view of the inducement law), but not frivolous, legal positions.  [A25-27]  The district court's Section 285 analysis, in contrast, focused

solely on Action Star's failure to earlier disclose the YouTube video on which it relied at summary judgment—and the district court's view that the lack of communication between Action Star and its attorney about the client's prior knowledge of the video "does not excuse Action Star from its discovery obligations." [A27-30]  From that, the court concluded: "Due to the unreasonable manner in which the instant case was litigated, the Court finds the case to be 'exceptional.'" [A30]

The actions that the court found to support an award of fees for the entire case, then, involved videos from a public source.  The videos were advertising the operation of the accused product.   The videos attribute themselves to "jcreate.com," a web site that lists its owner as KaiJet Technology International Ltd.  KaiJet has not denied the connection. The videos were thus equally available to KaiJet as to Action Star, and likely much more so.   And the videos were cumulative with the other evidence that Action Star submitted showing that the actual product infringed according to its default and enabled state.

The single instance of a discovery error, in view of these facts, the other factors in the litigation that the district court erroneously failed to consider in performing its Section 285 analysis (e.g., its finding that Action Star did not act in bad faith), cannot support an award of fees under Section 285.  The district court erred by focusing on one event for a Section 285 award, rather than balancing all

of the various factors in the litigation.  Rather, under this Court's longstanding law, for litigation activity by a patentee to support an award of fees, the overall litigation must be found to be unreasonable, and not just one part of a summary judgment presentation.  *Arbrook, Inc. v. American Hosp. Supply Corp.*, 645 F.2d 273, 279 (5th Cir. 1981) ("We reject the contention that the plaintiffs' alleged improper conduct during discovery supports a fee award.  Assuming such improprieties took place, the proper remedy lies under Fed. R. Civ. P. 37 and not under § 285."); *Western Marine Elec., Inc. v. Furuno Elec. Co.,* 764 F.2d 840, 847 (Fed. Cir. 1985) (affirming where appellant claimed district court's denial of attorney fees was based on the erroneous belief that § 285 sanctions were mutually exclusive from Rule 37 sanctions for discovery abuse); *White Consolidated Industries, Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983) (upholding denial of request for attorneys' fees pursuant to § 285 and Rule 37(c) despite allegedly 'egregious' failure to disclose information); *see also Immersion Corp. v. Sony Computer Entm't Am., Inc.*, No. C 02-0710 CW, 2005 U.S. Dist. LEXIS 4777, at * 33-37 (N.D. Cal. Jan. 10, 2005) ("When the alleged misconduct relates to the discovery process, courts rarely grant attorneys' fees pursuant to § 285 absent a serious breach, such as dishonest responses or failure to comply with discovery orders"); *Get-A-Grip, II, Inc. v. Hornell Brewing Co.,* NO. 99-1332, 2002 U.S. Dist. LEXIS 2589, at * 9 (E.D. Pa. Feb. 15, 2002) ("The proper remedy

for improper conduct in the course of discovery lies under Rule 37 and not under §
285.").  Indeed, Section 285 itself speaks generally about "exceptional cases," and
not supposedly exceptional events within a case.

The Supreme Court's decision in *Octane Fitness, LLC v. ICON Health &
Fitness, Inc.*, 134 S. Ct. 1749 (U.S. 2014), does not change that longstanding law.
In *Octane*, the Court simply held that the standard for an award of fees under
Section 285 should not be whether a case was "brought in subjective bad faith" and
"objectively baseless," but instead simply a case "that stands out from others with
respect to the substantive strength of a party's litigating position (considering both
the governing law and the facts of the case) or the unreasonable manner in which
the case was litigated)."  *Id.* at 1756.  Thus, under this Court's prior law and
*Octane*, the question is one of the overall reasonableness of the case and the overall
reasonableness of the litigation positions—particular instances relating to
discovery may be sanctioned elsewhere (*e.g.*, Federal Rule of Civil Procedure 37),
but not under Section 285.  *E.g., Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No.
C09-1769 MJP, 2011 U.S. Dist. LEXIS 61336, at *31-34 (W.D. Wash. June 8,
2011) (granting sanctions under Rule 37 but not § 285, in part, because the
litigation misconduct had "not so clearly permeated the entire case or its merits"
and the plaintiff's case did not "appear to be frivolous or baseless.").

23

The district court erred by looking at the reasonableness of a single discovery transaction in the case in awarding fees under Section 285. In particular, the district court's Section 285 analysis centers around the single effort by Action Star to rely on evidence of YouTube videos that had not been previously produced. [A27-30] But the district court's decision failed to balance that single instance against Action Star's other reasonable litigation activities, including its agreement to numerous Requests for Admission that helped narrow the issues in the case and its early amendment of its complaint to limit the case to only two claims of the '535 patent. The district court also did not consider that Action Star had focused the case on indirect infringement and candidly admitted that it was not arguing that it had evidence about a particular specific direct infringer. Each of these separate factors, which together counter a finding that the *overall* litigation was carried out unreasonably, needs to have been considered under proper Section 285 analysis, and they were not by the district court.

The handling of even that particular event failed to consider that the YouTube video was KaiJet's own unproduced evidence. It was evidence equally available, if not more available, to KaiJet as to Action Star. It showed how KaiJet intended customers to use the product, and it was not produced by KaiJet.

The district court's reliance on a single discovery transaction is particularly troublesome where the district court found no bad faith by Action Star. Neither

24

KaiJet nor the district court cited any decision that has awarded Section 285 fees for a case based on a single discovery activity that was not found to be in bad faith. And the court's award of Section 285 fees is triply troublesome because any substantive problem with the YouTube production was corrected when the court excluded the evidence—the typical action by a district court in such a situation, and an action that is not followed up by a sanction across the entire case. *E.g., Malico, Inc. v. Cooler Master USA, Inc*., No. No. C 11-4537 RS, 2013 U.S. Dist. LEXIS 118119, at * 21-25 (N.D. Cal. 2013) (excluding certain photographs first introduced in support of partial summary judgment for failure to disclose during discovery); *Ram Nehara v. California*, No.: 1:10-cv-00491 JLT, 2013 U.S. Dist. LEXIS 149088, at * 2-9 (E.D. Cal. Oct. 16, 2013) (Excluding two individuals from testifying as experts for failure to disclose their retainment as testifying experts); *see also Get-A-Grip,* 2002 U.S. Dist. LEXIS 2589, at * 13 (refusing to impose sanctions under § 285 because the movant "had already been made whole for its losses due to Get-A-Grip's misconduct during discovery" by way of earlier-issued Rule 37 sanctions); *Western Marine,* 764 F.2d at 847 (affirming district court's denial of attorneys' fees under § 285 where sanctions for discovery abuse had already been awarded under Rule 37).   In summary, the wrong that the district court identified is not the sort of wrong that the law allows to support a Section

285 award across a litigation. The district court's award of fees should therefore be vacated even if the summary judgment is affirmed.

### C. The District Court Erred by Not Tying the Amount of the Section 285 Award to the Perceived Wrong

The problems identified in the prior section point to the underlying fact that the problem the district court identified is, if anything, a discrete discovery violation. The typical sanction for late production of evidence that favors the producing party is exclusion of that evidence so that the party cannot gain from the evidence. *E.g.*, *Malico*, 2013 U.S. Dist. LEXIS 118119 at * 21-25; *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n.5 (9th Cir. 2006); *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1364-67 (Fed. Cir. 2011) (affirming district court's exclusion of expert testimony under Rule 37 for failure to disclose written reports). In more egregious circumstances, a district court can award fees related to the activity, but only, for example, the fees needed to respond to late production. *Woods v. Google, Inc.*, No. C11-01263 EJD , 2014 U.S. Dist. LEXIS 113149 at * 10 (N.D. Cal. Aug. 8, 2014) (sanctioning defendant for the late production of certain documents by ordering the payment of reasonable expenses incurred in drafting the Rule 37 briefs and participating in oral argument); *Frustere v. Wells Fargo Bank, N.A.*, No. 11-6395, 2013 U.S. Dist. LEXIS 89272 (N.D. Cal. 2013)

(failure to cooperate in discovery resulted in attorneys' fee award for preparing "the subject discovery documents and in drafting the instant [Rule 37] motion.").

The award of fees here, then, if any, should have been limited to KaiJet's response to the YouTube evidence—some fraction of the $158,396 that KaiJet sought for its opening and reply summary judgment briefing, and the summary judgment hearing.

## CONCLUSION

For the reasons discussed above, the district court's summary judgment of non-infringement should be vacated, the award of fees vacated, and the case remanded.

October 20, 2014

*/s/ John A. Dragseth*
John A. Dragseth
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070
Fax:  (612) 288-9696

Counsel for Plaintiff Appellant

## **CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on October 20, 2014.

CORRECTED OPENING BRIEF FOR ACTION STAR ENTERPRISE

I further certify that counsel of record are registered as CM/ECF users and will be served by the appellate CM/ECF system and via email.

October 20, 2014

*/s/ John A. Dragseth*
John A. Dragseth
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070
Fax:  (612) 288-9696

Counsel for Plaintiff/Appellant.

# **CERTIFICATE OF COMPLIANCE**

The Brief for Plaintiff-Appellant complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).  The relevant portions of the Responsive Brief, including all footnotes, contain 5,910 words, as determined by Microsoft Word® 2013.

October 20, 2014                    */s/ John A. Dragseth*
                                    John A. Dragseth
                                    Fish & Richardson P.C.
                                    60 South Sixth Street, Suite 3200
                                    Minneapolis, MN 55402
                                    Tel:  (612) 335-5070
                                    Fax:  (612) 288-9696

                                    Counsel for Plaintiff/Appellant.

ADDENDUM

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS)

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [48]

  This action involves allegations of patent infringement.  Plaintiff Action Star Enterprise Co. Ltd. is the assignee of all rights in U.S. Patent No. 8,099,535 (the "535 Patent" or the "Patent").  The Patent describes a method for using a computer mouse with a switch on it to toggle between two or more computers that are connected to a single keyboard, video display monitor, and computer mouse ("KVM system").  According to Plaintiff, Defendant KaiJet Technology International Ltd. has developed and sold certain products that enable a user to practice the methods described in Claims 1 and 6 of the 535 Patent.  On this basis, Plaintiff alleges Defendant is liable for induced and contributory patent infringement.

  Currently pending before the Court is Defendant's motion for summary judgment. (Dkt. No. 48.)  Because Plaintiff presents insufficient evidence of direct infringement, Defendant's motion is GRANTED.

## I. BACKGROUND

### A. Technical Background and Plaintiff's Patent

  In the computing world, it is sometimes convenient to use a single keyboard, video display monitor, and computer mouse[1] to control multiple computers.  *See* 535 Patent.

---

[1] Together, a keyboard, video monitor, and mouse are often referred to as a "KVM system."

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-08074 BRO (MRWx) | Date | April 18, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD. | | |

However, because a typical keyboard, video monitor, or mouse generally has only one connector cable, this would be impossible without a KVM switch.



As depicted in the figure above, a KVM switch is in essence a box that contains internal circuitry and various data ports into which cables from the keyboard, video monitor, and mouse connect. Also connected to the KVM switch are any computers that the user desires to control using the KVM system. The switch's internal circuitry permits a connection between one of the computers connected to the switch and the KVM system. As illustrated below, the result is that the user needs only one KVM system for use with multiple computers.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-08074 BRO (MRWx) | Date | April 18, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD. | | |



Similarly, sometimes it is convenient to use a single keyboard and mouse ("KM system") to control multiple computers and video monitors.  A KM switch is virtually identical to a KVM switch in function and form, but differs in that the video monitors are connected directly to the computers, not to the switch box.



A0003

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

As is apparent from the images above, a KVM or KM system can control only one computer at a time. Consequently, when the user desires to work on a computer not currently operated by the KVM or KM system, it must toggle from one computer to the other. There are two basic methods for doing this: (1) activate a button on the KVM switch box; or (2) activate an icon located on the video monitor's screen using the mouse's cursor. Several inventors have found these methods clumsy and inconvenient. *See, e.g.*, 535 Patent; U.S. Patent No. 7,774,518; U.S. Patent No. 7,631,123. Recognizing the need for a new, improved way of toggling from one computer to the next, Mr. Ching-wei Cheng—one of Plaintiff's employees—developed the methods described in Claims 1 and 6 of the 535 Patent.

Basically, the methods teach a way to toggle between computers by using a mouse that has a switch located on it, thus obviating the need for a traditional KVM switch box. The methods instruct the user to select a first computer to operate "by controlling the switch disposed on the mouse into a first direction corresponding to the use of the first computer host." 535 Patent 4:44–46, 5:34–36. If the user desires to use a second computer, the methods instruct the user to "control[] the switch disposed on the mouse into a second direction corresponding to the use of the second computer host." *Id.* at 4:52–54, 6:4–6. As set forth in the Patent's specification, "the switch disposed on the mouse is a scrolling ball, a scrolling reel, or a scrolling plate for change [sic] the direction by the operator."[2] *Id.* 3:25–27, 4:1–3. In full, Claim 1 teaches,

A method for converting a KVM system comprising the steps of:

(1) initializing a mouse device, at least two computer hosts, a keyboard, and at least two corresponding displaying devices;
(2) selecting which computer host and a corresponding displaying device are needed to be operated, then switching to the selected computer host and the corresponding displaying device by controlling a switch  disposed on the

---

[2] Yet Claims 1 and 6 do not limit the switch to only these three possibilities. *See* 535 Patent 4:31–67, 5:22–6:18.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

mouse into a particular direction; wherein step (2) further comprises the steps of:

> (2A) judging whether a first computer host is needed to be operated, if yes, going to step (2B), if no, going to step (2D);
> (2B) controlling the switch disposed on the mouse into a first direction corresponding to the use of the first computer host;
> (2C) operating the first computer host, then going to step (4);
> (2D) judging whether a second computer host is needed to be operated, if yes, going to step (2E), if no, going to step (2G);
> (2E) controlling the switch disposed on the mouse into a second direction corresponding to the use of the second computer host;
> (2F) operating the second computer host, then going to step (4); and
> (2G) continuing the steps of judging whether a third computer host, a fourth computer host, or other computer hosts, the steps being the same logic as the steps of (2A) to (2F), then going to step (4);

(3) operating the selected computer host and the corresponding displaying device;
(4) finishing the operation;
(5) judging whether one of the computer hosts and another corresponding displaying device is needed to be operated, if yes, going to step (2), if no, going to next step; and
(6) end.

*Id.* 4:31–67.  Claim 6 is very similar to Claim 1.  The main difference is that Claim 6 involves a KM system instead of a KVM system. *Compare id.* 4:31–67 *with id.* 5:22–6:18.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

**B. Defendant's Allegedly Infringing Products**

According to Plaintiff, Defendant has developed and sold products that enable users to practice Claims 1 and 6 of the 535 Patent, and thus is liable for induced and contributory infringement. (*See* Compl.[3] ¶ 10.) Specifically, Plaintiff identifies three of Defendant's products that give rise to infringement: (1) Wormhole JUC #100; (2) Wormhole JUC #200; and (3) Wormhole JUC #400 ("Wormhole products"). (Compl. ¶ 14.) These products are very similar in function. In essence, each is a USB cable that connects between either two computers or a computer and a tablet device. (Lyu Decl. Exs. A–C.) The only significant difference between the three Wormhole models is the



devices that are supported (e.g., Windows, Mac, iPad, Android). (*Id.*) The products permit a data connection between two computers through which files may be shared. (*Id.*) They also permit a user to operate the keyboard and mouse of one computer to control a different computer to which it is connected through Defendant's product. (*Id.*)



---

[3] In citing to the complaint, the Court cites to the operative complaint—that is, the first amended complaint, Dkt. No. 8.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-08074 BRO (MRWx) | Date | April 18, 2014 |
|----------|------------------------|------|----------------|
| Title | ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD. | | |

Because Defendant's Wormhole product enables a user to control two computers with a single keyboard and mouse, it effectively functions as a KM switch.  (Pl.'s Statement of Genuine Disputes ("SGD") ¶ 17.)

As described in the Wormhole product's manual, a user can toggle from using the keyboard and mouse to control one computer to the other computer in one of four ways: (1) clicking the mouse's middle button; (2) moving the cursor to the edge of the screen of the computer that is currently activated; (3) clicking a specified area of the screen of the computer that is currently activated; or (4) using a "hotkey" command—"Alt + s".  (Lyu Decl. Ex. A, at 11; Ex. B, at 16–17; Ex. C, at 3.)

Believing that Defendant's Wormhole products allow a user to practice the methods described in Claims 1 and 6 of the 535 Patent, Plaintiff filed the instant lawsuit, alleging a single count of patent infringement.[4]  (Compl. ¶¶ 17–18.)

### C. Plaintiff's Evidence Submitted in Opposition to Defendant's Motion[5]

The evidence that Plaintiff submits in opposition to the instant motion consists of declarations of three individuals: (1) Ching-Wei Cheng (Dkt. No. 56-7); (2) Andy Lee (Dkt. No. 56-6; and (3) Jeff Lee (Dkt. Nos. 56-4,5).  The Court will summarize each declaration.

---

[4] Although it was not entirely clear from the complaint, it is now undisputed that Plaintiff alleges only indirect infringement, not direct infringement.  (Pl.'s SGD ¶¶ 18–23; Opp'n 4 ("Because the direct infringement is the practice of the patented method, Plaintiff is actually pursuing indirect infringement liability against KaiJet.").)  Plaintiff reaffirmed this at the hearing on the instant motion.

[5] Defendant objects to much of Plaintiff's evidence. (Dkt. No. 60.)  Many of those objections are meritorious.  For example, Defendant objects to the website address for a YouTube search query that each of Plaintiff's declarants provide.  It also objects to screen-shot images of one or more videos apparently returned by the YouTube search query.  The Court agrees that the videos, which were not submitted, are unauthenticated and therefore inadmissible.  Any screen shots from those videos are likewise unauthenticated and inadmissible.  Therefore, Plaintiff's descriptions of the videos and its assertions that the videos depict infringing activity are based on unauthenticated, inadmissible evidence.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

### 1. *Declaration of Ching-Wei Cheng*

In Mr. Cheng's declaration, he begins by explaining that he is an employee of Plaintiff and the inventor of the methods described in the 535 Patent. (Cheng Decl. ¶¶ 1–2.) He then very briefly describes the 535 Patent's contents and asserts that Plaintiff's own product "implemented the patented operational method of" the 535 Patent. (*Id.* ¶¶ 3–4.) Cheng explains that Plaintiff purchased one of Defendant's Wormhole products and Cheng tested it, "generally follow[ing] the instructions on the manual/guide that came with the [Wormhole product] Unit." (*Id.* ¶¶ 5–6.) He proceeds to describe what he observed when he tested Defendant's product. (*Id.* ¶ 7.) Cheng surmises that "consumers who purchased the same or similar [Wormhole] Unit would operate the product in a way that is similar to the way [he] did." (*Id.* ¶ 8.)

Mr. Cheng then states that "[i]n or around mid-year 2012, [he] found some YouTube videos, showing the operation of [Defendant's Wormhole] products (those identified in [Plaintiff's] complaint as infringing)." (*Id.* ¶ 9.) He includes a website address that evidently is a YouTube search query for videos related one of Defendant's products. (*Id.* ¶ 10.) Cheng explains that "[t]he videos showed a person giving demonstration [sic] of the intended operation of the [Wormhole] Unit." (*Id.* ¶ 11.) He then describes one video in particular,

> The video showed the mouse-enabled switch controlling functions where two (2) computer hosts are connected by a [Wormhole] Unit. By switching to a particular direction, the user is then able to control and operate on the computer hosts corresponding to that particular switched to direction, in a way that's consistent with the method within the scope of my invention.

(*Id.* ¶ 12.) As an exhibit to his declaration, Cheng attaches still images of the particular video he describes. (*Id.* Ex. A.)

Finally, Mr. Cheng explains that at some point in this litigation Defendant "claimed that its [Wormhole] Units were provided by an 'OTi' [] business entity in Taiwan." (*Id.* ¶ 14.) Apparently, "[Cheng] led [Plaintiff's] product development team in the design and production of [its] patented product using OTi's chipsents." (*Id.* ¶ 15.)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

From this, Cheng hypothesizes that "OTi, in working with [Plaintiff] to develop [its] patented products" must have learned the patented method to make its own products, which OTi then sold to Defendant. (*Id.* ¶ 16.)

### 2. *Declaration of Andy Lee*

In Mr. Andy Lee's declaration, he indicates he is "the Branch Manager of Action Star (USA) Inc.," a wholly-owned subsidiary of Plaintiff. (Andy Lee Decl. ¶ 1.) Like Mr. Cheng, Andy Lee explains that in "early 2013, [he] became aware of some Youtube videos, showing the operation of [Defendant's Wormhole] products (those identified in [Plaintiff's] Complaint as infringing." (Andy Lee Decl. ¶ 4.) He provides the same website address as Cheng. (*Compare* Andy Lee Decl. ¶ 5 *with* Cheng Decl. ¶ 10.) Andy Lee's description of one video in particular is identical to Cheng's, except that it omits one final line. (*Compare* Andy Lee Decl. ¶ 7 *with* Cheng Decl. ¶ 12.) Andy Lee also includes as an exhibit to his declaration the same still images of the video as Cheng does in his. (*Compare* Andy Lee Decl. Ex. A *with* Cheng Decl. Ex. A.)

Andy Lee goes on to describe Plaintiff's own KVM-switching products and asserts that they "implement[] the patented operational method of" the 535 Patent. (Andy Lee Decl. ¶ 9.) He attaches as an exhibit to his declaration documents relating to the capabilities of Plaintiff's products. (*Id.* Ex. B.) Later he describes one (unpatented) functional ability common to both Defendant's products and Plaintiff's products. (*Id.* ¶ 15.)

Finally, Andy Lee explains that he too "tried [Defendant's] unit, and generally followed some of the instructions on the manual/guide that came with" it. (*Id.* ¶ 13.) He does not, however, describe what he observed or did when using the device. Notably, Andy Lee does not assert Defendant's products enable the 535 Patent's methods—he merely "believe[s] that consumers who purchased the same or similar [Wormhole] Unit would operate the product in a way that is generally the same way I did and that is generally the same way as enabled by [Plaintiff's] *own products*." (*Id.* ¶ 14 (emphasis added).)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

### *3. Declaration of Jeff Lee*

In Mr. Jeff Lee's declaration, he indicates he is Plaintiff's attorney. (Jeff Lee Decl. ¶¶ 1–2.) Jeff Lee describes, and attaches as exhibits to his declaration, several letters and emails he sent to Defendant and sellers of Defendant's products, explaining Plaintiff's position that the Wormhole products are infringing. (*Id.* ¶¶ 3–9, Exs. A–G.) He also attaches as an exhibit to his declaration an image from Defendant's website, which offers its products for sale. (*Id.* Ex. H.) Finally, Jeff Lee includes the same website address for the YouTube search query that Andy Lee and Mr. Cheng provide. (*Compare* Cheng Decl. ¶ 10 *and* Andy Lee Decl. ¶ 5 *with* Jeff Lee Decl. ¶ 11.) He also includes as an exhibit images from one of the videos returned in the search query; three of the images are the same as what Cheng and Andy Lee provide, but there is also an additional image. (*Compare* Cheng Decl. Ex. A *and* Andy Lee Decl. Ex. A *with* Jeff Lee Decl. Ex. I.) Jeff Lee does not describe the content of any video.

## D. Procedural History

After the parties filed their respective papers in connection with the instant motion, the Court requested concurrent supplemental briefing. (Dkt. No. 65.) In its request, the Court asked the parties to discuss whether "'us[ing] the mouse, via a switch mechanism (either a button, track ball, scroll plate, anything that serves the movement/motion sensing triggering mechanism) to have the mouse cursor move to a desired direction, to select and operate the computer host corresponding to that direction' falls within the [Patent] claims' scope." (*Id.* at 3.) In response to the Court's request, both parties have submitted supplemental briefing.[6] (Dkt. Nos. 66, 67.)

## II.   LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is

---

[6] After considering the parties' supplemental briefing, in addition to the other arguments made in support of and in opposition to Defendant's motion for summary judgment, the Court has limited its analysis to the issue of whether Plaintiff has produced evidence of direct infringement. Accordingly, the Court need not reach the issues raised in the parties' supplemental briefs.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|----------|---------------------------|------|----------------|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* A court may consider the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Thus, where a defendant moves for summary judgment on the plaintiff's claims—claims for which the plaintiff would have the burden of proof at trial—the defendant "is not required to produce evidence showing the absence of a genuine issue of material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). Nor is a defendant required to "support [its] motion with affidavits or other similar materials *negating*" the claims. *Id.* at 1543 (emphasis in original). Rather, a defendant "need[] only point to shortfalls in [the plaintiff's] case to demonstrate the absence of evidence" supporting its claims. *Id.* A defendant may do this by pointing to the pleadings and arguing that the plaintiff has failed to establish an element essential to its case. *Celotex Corp.*, 477 U.S. at 323. Specific to the patent infringement context, the Federal Circuit has articulated that, "[i]n light of *Celotex*, [where a defendant accused of patent infringement moves for summary judgment], nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Exigent Tech. Inc. v. Atrana Solutions Inc.*, 442 F.3d 1301, 1308–09 (Fed. Cir. 2006).

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to specifically identify the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## III.   DISCUSSION

In its motion, Defendant contends it is entitled to summary judgment on any one of five separate grounds: (1) the 535 Patent is invalid because it is indefinite under 35 U.S.C. § 112; (2) Plaintiff admits Defendant is not liable for *direct* infringement; (3) Plaintiff has presented no evidence of direct infringement to support its claim of *indirect* infringement; (4) Plaintiff never alleged induced infringement; and (5) Defendant cannot be liable for contributory infringement because there are substantial noninfringing alternative uses for Defendant's products. (Mot. 1–2.) After considering all of the parties' arguments, the Court agrees that Defendant is entitled to summary judgment. Nevertheless, the Court will limit its discussion to the third basis asserted by Defendant, as it disposes of this matter entirely.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

Plaintiff alleges Defendant is liable for induced and contributory patent infringement. Under a theory of induced infringement, a person can be liable for inducing another to infringe a patent. 35 U.S.C. § 271(b). The act of inducement can be satisfied by causing, urging, encouraging, or assisting the infringing conduct. *Akamai Techs. Inc. v. Limelight Networks Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012). Under a theory of contributory infringement, a person can be liable for selling, offering to sell, or importing "a material or apparatus for use in practicing a patented process, constituting a material part of the invention." 35 U.S.C. § 271(c). For either theory, it is well settled that there is no liability unless there is also some act of direct infringement committed by someone. *Akamai Techs.*, 692 F.3d at 1308 ("inducement gives rise to liability only if the inducement leads to actual infringement"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) ("it is settled that if there is no direct infringement of a patent there can be no contributory infringement"). To directly infringe a patented method—the type of patent claims that are involved in this suit—"a person must have practiced all steps of the claimed method." *Lucent Techs.*, 580 F.3d at 1320.

In opposing the instant motion, Plaintiff relies on very limited evidence. The only evidence it proffers comprises the declarations of Mr. Ching-Wei Cheng, Mr. Andy Lee, and Mr. Jeff Lee. (Dkt. Nos. 56-7, 56-6, 56-4,5.) The Court has reviewed the evidence and determines it is insufficient to create a genuine issue of material fact and thus avoid summary judgment.

As stated above, Mr. Cheng is the inventor named on the 535 Patent. In his declaration, he briefly overviews the patented methods in Claims 1 and 6 and then asserts that Plaintiff's own switching device implements those methods. (Cheng Decl. ¶¶ 3–4.) Cheng then describes what he observed when he tested Defendant's Wormhole product. (*Id.* ¶¶ 6–7.) He explains that "[a] user can [] use the mouse, via a switch mechanism (either a button, trackball, scroll plate, anything that serves the movement/motion sensing and triggering mechanism) to have the mouse cursor move to a desired direction, to select and operate the computer host corresponding to that direction." (*Id.* ¶ 7(b).) Cheng then describes that the "user can cause the switch mechanism on the mouse to move the cursor location to move to a first direction, to operate on the first computer host. To operate the second computer host, the switch mechanism on the mouse is controlled to move the cursor into a second direction." (*Id.* ¶ 7(c).) He concludes, "If none of the computer

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

hosts needs to be operated on, the operation seems to loop back to the beginning . . . and wait for any user action to control the mouse movement to the desired direction for the particular computer host to be operated on." (*Id.* ¶ 7(d).)

Even assuming Mr. Cheng's observations fall within the scope of Claims 1 and 6, his declaration is not evidence of direct infringement. The Federal Circuit has held that "it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010); *ACCO Brands Inc. v. ABA Locks Mfr. Co. Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). The only exceptions to this rule arise if "the [patent's] claim language only requires the capacity to perform a particular claim element," *Fujitsu*, 620 F.3d at 1329, or where "the accused device necessarily infringes the patent in suit," *ACCO Brands*, 501 F.3d at 1313. Neither of these exceptions applies in this case. Claims 1 and 6 do not require only the capacity to perform its elements—they require the user to actually practice the included steps. And Plaintiff admits the Wormhole products do not, standing alone, infringe the 535 Patent. (Pl.'s SGD ¶¶ 18–23.) The 535 Patent is directed to a *method*—not a device—which is infringed when a person [has] practiced all steps of the claimed method." *Lucent Techs.*, 580 F.3d at 1320. Therefore, Plaintiff must show specific instances of infringement— that is, specific instances of someone performing each step of the methods described in Claims 1 and 6. *See id.* But Mr. Cheng's observation of when he used the Wormhole product is not a specific instance of infringement: Cheng's use of the method—as the inventor and Plaintiff's employee—is not unauthorized, and therefore is not infringing. *See* 35 U.S.C. § 271. Furthermore, Cheng used the device in Taipei, Taiwan, not in the United States. *See id.* Accordingly, Cheng's testimony of what he did—even if it would satisfy every step of methods described in Claims 1 and 6—is not evidence of a specific instance of infringement.

Nor are Cheng's beliefs, hypotheses, or predictions evidence of specific instances of infringement. Cheng asserts that consumers would use the Wormhole products in the same way he did. (Cheng Decl. ¶ 8 ("I believe consumers who purchased the same or similar JUC Unit would operate the product in a way that is similar to the way I did.").) Similar to the Federal Circuit's reasoning in *Fujitsu*, a conjecture as to what consumers are capable of doing with Defendant's products is simply not a specific instance of

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

infringement. *Fujitsu*, 620 F.3d at 1328–29 (rejecting the plaintiff's invitation to "presume instances of direct infringement" where a product's user manual described how to perform the patented method).

Furthermore, the website address that Mr. Cheng, Andy Lee, and Jeff Lee include in their declarations is not evidence of specific instances of direct infringement. The website address evidently links to a YouTube search query for videos relating to Defendant's Wormhole products. (Cheng Decl. ¶ 10; Andy Lee Decl. ¶ 5; Jeff Lee Decl. ¶ 11.) Neither Cheng nor Andy Lee nor Jeff Lee expressly identify as evidence of direct infringement any one particular video returned by the search query. (*See* Cheng Decl. ¶¶ 9–13; Andy Lee Decl. ¶¶ 4–8; Jeff Lee Decl. ¶¶ 11–12.) Nor do they submit as evidence any actual videos. They do, however, attach the same three screen-shot images that apparently come from the video they viewed and subsequently described. (*See* Cheng Decl. Ex. A; Andy Lee Decl. Ex. A; Jeff Lee Ex. I.)[7] Yet Cheng and Andy Lee's identical descriptions of the video (or videos) are not evidence of direct infringement. They explain, "The video showed the mouse-enabled switch controlling functions where two (2) computer hosts are connected by a [Wormhole] Unit. By switching to a particular direction, the user is then able to control and operate on the computer hosts corresponding to that particular switched to direction." (Cheng Decl. ¶ 12 (further adding ". . . in a way that's consistent with the method within the scope of my invention"); Andy Lee Decl. ¶ 7.) This description is conclusory and does not explain how the videos portray a person practicing each of the steps involved in Claims 1 and 6 being practiced. (*See* Cheng Decl. ¶ 12; Andy Lee Decl. ¶ 7.) In short, Cheng and Andy Lee's descriptions are insufficient to create a genuine issue of material fact and therefore may not preclude summary judgment.

---

[7] Notably, the screen-shot images that Cheng and Andy Lee provide are clearly not separate images individually printed by Cheng and Lee—they are the same images merely reproduced for each person's declaration, as evidenced by the exact same time and date in the lower right-hand corner of the images provided, as well as identical registers for the number of times the videos had been viewed. (*Compare* Cheng Decl. Ex. A *with* Andy Lee Decl. Ex. A.) Also notable—as pointed out by Defendant at the hearing on this matter—is that the screen-shot images provided by Plaintiff appear to indicate that they were uploaded in 2011, before the 535 Patent was issued on January 17, 2012. (*See* Cheng Decl. Ex. A; Andy Lee Decl. Ex. A; Jeff Lee Decl. Ex. I.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|----------|------------------------------|------|----------------|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

Finally, Plaintiff even concedes it does not have evidence of specific instances of infringement. (*See* Opp'n 9:21–28.) Plaintiff contends that, "despite there being no direct evidence of a consumer practicing the [patented method as enabled by Defendant's products], it is more likely than not that consumers (end users) would use the accused [Wormhole] Units in generally the same way as Action Star people use it." (*Id.* at 9:24– 28.) Just prior to this, Plaintiff asserted that "as long as [it] proves, by a preponderance of the evidence, that [Defendant's product] falls within the scope of the asserted [patent] claims, [Defendant's] indirect liability can be established." (*Id.* at 9:21–23.) As already discussed above, the Federal Circuit has rejected this similar reasoning in at least two opinions. *See Fujitsu*, 620 F.3d at 1328–29; *ACCO Brands*, 501 F.3d at 1313. Evidence of how consumers are likely to use a product or evidence of what a product is capable of doing does not establish direct infringement. *See Fujitsu*, 620 F.3d at 1329. Indirect infringement must be based on evidence of direct infringement, which must be proved by evidence of "specific instances of direct infringement." *Id.*

In sum, Plaintiff has not provided evidence of direct infringement, and therefore has not created a genuine issue of material fact on the issue of indirect infringement through theories of induced or contributory infringement. To avoid summary judgment, the nonmoving plaintiff must present admissible evidence upon which a reasonable jury could return a verdict in its favor. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). Plaintiff has failed to do this. Plaintiff's claim that "[it] and its counsel [did] not want to make the action more expensive than it already is [and therefore] reasonably refrain[ed] from doing discovery acts that are not necessary" is simply unavailing. (Opp'n 10:1–3.) The Court may have "order[ed] counsel 'to secure the just, speedy, and *inexpensive* determination of every action,'" and it may have indicated that "[D]iscovery should be kept to a minimum and focus only on issues genuinely in dispute" (Opp'n 8:19–24), but this does not relieve Plaintiff of the obligation to produce enough evidence to prove its claim and therefore avoid summary judgment. Because Plaintiff has failed to meet this obligation, Defendant's motion is GRANTED.

A0016

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | April 18, 2014 |
|---|---|---|---|
| Title | **ACTION STAR ENTER. CO. LTD. v. KAIJET TECH. INT'L LTD.** | | |

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's entire action.

Defendant is ordered to file a Proposed Judgment no later than Monday, May 12, 2014.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |

JS−6

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**CENTRAL DISTRICT OF CALIFORNIA**

12

Action Star Enterprise, Co., Ltd.

Case No. 2:12-CV-08074-BRO-MRW

13
14

Plaintiff,

**FINAL JUDGMENT**

v.

15
16

KaiJet Technology International,
Limited, and DOES 1 to 10,

17
18

Defendants.

19
20
21
22
23
24
25
26
27
28

1    Pursuant to and for the reasons stated in this Court's order dated April 18,

2    2014 [Dkt. No. 69], in which the Court granted Defendant KaiJet Technology

3    International, Limited's ("Defendant") Motion for Summary Judgment, the Court

4    HEREBY ORDERS, ADJUDGES, AND DECREES as follows:

5    (1)    The Court enters judgment in favor of Defendant on all of Plaintiff's

6            claims of indirect infringement of the patent-in-suit, U.S. Patent No.

7            8,099,535 ("the 535 Patent"), and those claims are therefore

8            dismissed with prejudice;

9    (2)    By separate order, the Court has dismissed without prejudice,

10           pursuant to the parties' stipulation, Defendant's counterclaims for

11           declaratory judgment of non-infringement and invalidity of the 535

12           Patent as moot;

13   (3)    This is therefore a final judgment disposing of all claims asserted by

14           or against all parties; and,

15   (4)    Defendant shall recover from Plaintiff its costs of suit.

16

17   **IT IS SO ORDERED.**

18   Dated: May 16, 2014

19                                        HONORABLE BEVERLY REID O'CONNELL

                                          UNITED STATES DISTRICT COURT JUDGE
20

21

22

23

24

25

26

27

28

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    (IN CHAMBERS)

## ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES [91]

In the instant motion, Defendant Kaijet Technology International seeks to recover some of the attorneys' fees it incurred in defending against this lawsuit brought by Plaintiff Action Star Enterprises. First, Kaijet contends that it is entitled to recover attorneys' fees pursuant to 35 U.S.C. § 285 because the facts of the instant case are so "exceptional" as to warrant an award of fees. *See* 35 U.S.C. § 285. Second, Kaijet contends that it is entitled to recover fees and costs pursuant to 28 U.S.C. § 1927 because Action Star's counsel unreasonably prolonged and multiplied the proceedings in bad faith. *See* 28 U.S.C. § 1927. In total, Kaijet asks the Court to award $470,057.65.

After reviewing the parties' arguments and exhibits, the Court agrees that Kaijet is entitled to an award of attorneys' fees pursuant 35 U.S.C. § 285, due to the "exceptional" nature of the instant case. The Court, however, finds that Kaijet has not demonstrated that Action Star's counsel acted in bad faith. Accordingly, the Court denies Kaijet's request to assess the fee award against Action Star's counsel, personally, pursuant to 28 U.S.C. § 1927.

For these reasons, Defendant's motion is GRANTED in part and DENIED in part.[1]

---

[1] After consideration of the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. Local Rule 7-15.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

## I.    BACKGROUND

Before filing its complaint, Action Star dispatched a series of cease and desist letters to both Kaijet and Kaijet's customers, warning them of Kaijet's alleged patent-infringing products. (Koppelman Decl. Exs. B, D.)[2]  In response, Kaijet asked Action Star to stop harassing Kaijet's customers. (Koppelman Decl. Ex. F.)  After Action Star filed its complaint, Kaijet again wrote to Action Star to notify it of possible Rule 11 sanctions and to ask it to withdraw its complaint. (Koppelman Decl. Exs. G, H.)  Action Star refused to withdraw its complaint and confirmed its infringement theories. (Koppelman Decl. Ex. I.)  Kaijet filed its Motion for Rule 11 Sanctions, which the Court denied without prejudice on February 28, 2013. (Dkt. Nos. 15, 27.)

After discovery opened, Action Star served its initial disclosures on March 29, 2013, and listed only one witness and one entity as likely to have discoverable information: Ching-Wei Cheng ("Mr. Cheng"), the inventor of the patent at issue ("535 Patent"); and Ours Technology Inc. ("OTI"), one of Kaijet's suppliers. (Koppelman Decl. Ex. J, at 2.)

On July 18, 2013, Kaijet served interrogatories and requests for production seeking all facts and support for Action Star's contention that Kaijet infringes the 535 Patent. (Koppelman Decl. Exs. K, L.)  Kaijet served additional requests for production on November 5, 2013, requesting "all documents and things" relating to Action Star's infringement claim. (Koppelman Decl. Ex. M, at 10–12.)  Action Star's response did not contain any evidence of direct or indirect infringement. (Koppelman Decl. Exs. P, Q.)  On December 4, 2013, Kaijet's counsel notified Action Star of the discovery response's deficiencies in a meet-and-confer letter. (Koppelman Decl. ¶ 21.)  On December 7, 2013, Action Star's counsel responded, stating that information on direct infringement was actually in Kaijet's control and that Action Star had no further responsive information to provide. (Koppelman Decl. Ex. S.)

Action Star formally engaged technical expert Dr. Don Barker ("Barker") in late 2013 and early 2014, who opined that the Enabled Usage in Kaijet's accused products

---

[2] Mr. Koppelman's declaration is located at Docket No. 105, but the exhibits to his declaration are located at Docket Nos. 91-2–91-29.  The appendices to his declaration are located at Docket Nos. 105-1–105-2.

**LINK:**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

fell within the 535 Patent claim.  (Jeff Lee Decl. ¶ 25.)  Action Star did not seek any discovery from Kaijet regarding how Kaijet's customers used the accused products or how Kaijet might test its products.  (Koppelman Decl. ¶ 14.)  It never noticed a single deposition of Kaijet and never issued a subpoena.  (Koppelman Decl. ¶ 14.)  Instead, Action Star believed it did not need to conduct any depositions because it was planning to rely solely on the Barker report and testimony at trial to prove infringement.  (Jeff Lee Decl. ¶ 27.)  Nevertheless, Action Star did not timely proffer the Barker report before the discovery period's closing date on December 5, 2013, so the Court did not admit the report.  (Jeff Lee Decl. ¶ 30.)

Kaijet filed its summary judgment motion on February 14, 2014.  (Dkt. No. 48.)  Action Star admitted to the several facts in its opposition to Kaijet's Motion for Summary Judgment:

> Action Star's infringement contentions do not cite any evidence to show actual performance of the claimed method by anyone.  (Undisputed Fact No. 12.)

> In response to [Kaijet's] discovery request, Action Star did not produce evidence of anyone ever performing the claimed method.  (Undisputed Fact No. 26.)

> Action Star's infringement contentions contain no mention of induced or contributory infringement, let alone identification of any facts that establish the requirements for those claims.  (Undisputed Fact No. 33.)

In its opposition to Kaijet's Motion for Summary Judgment, Action Star relied on the Declaration of Ching-Wei Cheng.  (Dkt. No. 56-7.)  Mr. Cheng's declaration contained various facts purporting to support Action Star's infringement claim, which included a reference to some Youtube videos that showed the operation of Kaijet's accused products.  Mr. Cheng became aware of these Youtube videos in mid-2012.  (Dkt. No. 56-7, ¶¶ 9–10.)

Action Star also relied on the Declaration of Andy Lee in its opposition.  (Dkt. No. 56-6.)  Although Andy Lee sent out cease and desist letters on behalf of Action Star and attended the October 2013 mediation, Action Star never disclosed the existence or relevance of Andy Lee in its initial disclosures.  (Jeff Lee Decl. ¶ 29.)  Andy Lee's

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

declaration also referred to the Youtube videos mentioned in Mr. Cheng's declaration. (Dkt. No. 56-6, ¶¶ 4–5.)  Andy Lee became aware of these Youtube videos "[a]t least by early 2013. . . ."  (Dkt. No. 56-6, ¶ 4.)

Action Star's counsel believes that these Youtube videos were not passed to him "because of the lack of communication between counsel and client . . . ."  (Jeff Lee Decl. ¶ 49.)  Action Star showed its counsel the Youtube videos in late February or early March 2014.  (Jeff Lee Decl. ¶ 50.)  Action Star's counsel claims that he only used the Youtube video "as a 'defensive' use for the purpose of supporting Action Star's opposition in the [Motion for Summary Judgment]."  (Jeff Lee Decl. ¶ 51.)

Action Star and Kaijet met and conferred on February 7, 2014, before Kaijet filed its summary judgment motion.  Action Star refused to concede the issue of direct infringement at this meet and confer.  (Koppelman Decl. ¶ 25.)  On March 10, 2014, after Kaijet had filed its summary judgment motion, Action Star informed Kaijet that Action Star would be dropping the direct infringement claim and will only be "pursuing indirect infringement liability against Kaijet . . . ."  (Dkt. No. 56, ¶ 5.)  Action Star also withdrew its claim for damages on March 21, 2014.  (Dkt. No. 63, at 7.)  In Action Star's Response to Kaijet's Evidentiary Objection, Action Star stated that it "is not making damages claims in this action."  (Dkt. No. 63, at 7.)

## II.    LEGAL STANDARD

### A. 28 U.S.C. § 1927

Aside from holding a party liable for a prevailing party's attorneys' fees, an attorney may be ordered to compensate the prevailing party if the attorney "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  In such a case, the attorney may be ordered to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Id.*

"[R]egional circuit law controls the analysis of whether to impose Section 1927 sanctions against a party in a patent infringement case."  *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enterprises, Inc. (U.S.A.)*, 2009 WL 9137315, at *4 (C.D. Cal. Dec. 14, 2009) (citing *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003)).

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

"In the Ninth Circuit, fees may be awarded under Section 1927 on a showing of subjective bad faith, which may be met where counsel 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Id.* (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)). An award under Section 1927 is not precluded merely because there is "some merit in counsels' actions." *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 727 (9th Cir. 1984). "While the presence of merit in a claim or defense may well negate any notion of bad faith in its filing, it certainly cannot justify abuse of the judicial process in the methodology of its prosecution." *Id.* The Court has the discretion to exercise sanctions under Section 1927. *Id.* "The district court's authority to sanction attorneys under § 1927 . . . must be exercised with restraint and discretion." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010).

### B. 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. On April 29, 2014, the Supreme Court lowered the standard for determining whether attorneys' fees are appropriate under 35 U.S.C. § 285. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.
>
> . . . .
>
> . . . Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one.

*Id.* at 1756, 1758 (footnote omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

The Supreme Court also noted that "a district court may award [attorney] fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757.

## III.   DISCUSSION

Kaijet argues that the totality of circumstances should compel the Court to award attorneys' fees under 28 U.S.C. § 1927 and 35 U.S.C. § 285 because (1) Action Star unreasonably prolonged this case when it had no reasonable factual or legal basis to maintain its claims; (2) Action Star manipulated this litigation for the improper purpose of harassing and harming Kaijet's business; and (3) Action Star failed to prosecute its case, stonewalled Kaijet's attempt to obtain discoverable information, withheld discoverable information, and misled Kaijet regarding the existence of discoverable information.  The Court will examine each argument in turn.

### A. Sanctions Under 28 U.S.C. § 1927

As explained above, in certain circumstances, 28 U.S.C. § 1927 gives a court discretion to require counsel to satisfy the opposing party's attorneys' fees: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Importantly, sanctions under this section "must be supported by a finding of subjective bad faith."  *See New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).  An attorney acts in bad faith when it "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted); *accord West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990).  "[I]n the contexts of § 1927, frivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose."  *In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010).

Upon reviewing the parties' arguments and supporting exhibits, the Court finds that Action Star's counsel recklessly asserted an indirect infringement claim unsupported

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

by any evidence of direct infringement.[3]  Action Star's reckless claim, however, was not frivolous.  First, the ultimate result of the case was not obvious to Action Star's counsel because he formed a good-faith (albeit incorrect) belief that he had sufficient evidence to establish indirect patent infringement.[4]  (Jeff Lee Decl. ¶¶ 21–30.)  Second, the arguments advanced were not wholly without merit, considering that Action Star obtained an expert who opined that Kaijet's Enabled Usage falls within Action Star's 535 Patent.  (Jeff Lee Decl. ¶ 25.)  Furthermore, responses from other accused party's counsel supported Action Star's belief in the validity of its infringement claim.[5]  (Jeff Lee Decl. ¶¶ 40–43.)  "[R]eckless nonfrivolous filings, without more, may not be sanctioned."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

Action Star also did not argue a meritorious claim for the purpose of harassing Kaijet.  The record contains no concrete evidence that Action Star brought this action to harass Kaijet.  *See Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 861 (9th Cir. 1986) (denying Section 1927 sanctions in part because the record contained no evidence that the motion was a tactic to harass the defendant).  Action Star's counsel conducted prefiling investigations and formed a good-faith belief that it had a valid infringement claim.  (Jeff Lee Decl. ¶¶ 7–32.)  Action Star made no attempt to extort money from Kaijet, never offered a settlement demand to obtain a nuisance settlement, nor did it coerce Kaijet to settle under the threat of protracted litigation.

---

[3] Action Star's counsel incorrectly assumed that he had sufficient evidence to establish patent infringement.  (Jeff Lee Decl. ¶¶ 21–30.)  Diligent research expected of all lawyers would have revealed the true standard for indirect infringement to Action Star.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) (explaining that indirect infringement must be based on evidence of direct infringement, which must be proved by evidence of "specific instances of direct infringement"); *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) ("Hypothetical instances of direct infringement are insufficient to establish . . . indirect infringement.").  Additionally, Kaijet's email to Action Star's counsel on February 7, 2014 put Action Star on notice of the standard for indirect infringement.  (Koppelman Decl. Ex T, at 1.)

[4] Counsel for Action Star believed that he only needed the expert report and testimony of Dr. Don Barker to prove patent infringement to the jury.  (Jeff Lee Decl. ¶¶ 26–27.)  The Court, however, excluded the report due to its untimeliness.  (Jeff Lee Decl. ¶ 30.)

[5] Counsel of Fry's Electronics and counsel of Jo-Dan International agreed not to continue selling the accused products.  (Jeff Lee Decl. ¶ 41.)

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-08074 BRO (MRWx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

Additionally, "[b]ecause [§ 1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun. . . . § 1927 cannot be applied to an initial pleading." *See* 28 U.S.C. § 1927; *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). In the instant case, Action Star did not multiply the proceedings with its amended complaint. Action Star's amended complaint only withdrew the unfair competition claim asserted in the original complaint. (Dkt. Nos. 1, 8); (Opp'n to Mot. for Attorney Fees, at 22.) "Courts have sanctioned parties under § 1927 for filing amended complaints, but generally in situations in which the court had previously dismissed claims that were subsequently repled without material alteration." *Torres v. City of Madera*, 2006 WL 3257491, at *9 (E.D. Cal. Nov. 9, 2006) (citing *Wages v. I.R.S.*, 915 F.2d 1230, 1235–36 (9th Cir. 1990)) (denying sanctions under § 1927 because the plaintiff's amended complaint did not include causes of action previously dismissed by the court). Action Star's amended complaint most likely helped to curtail the litigation.

Due to the foregoing reasons, sanctions under 28 U.S.C. § 1927 are DENIED.

### B. Sanctions Under 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court recently lowered the standard for awarding attorneys' fees under Section 285. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755–56 (2014). In determining whether an award under Section 285 is appropriate, courts now must simply determine if the case is "exceptional." *See id.* "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Awards under Section 285 no longer require a finding of bad faith. *Cf. Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (imposing sanctions under Section 285 only if "the litigation is brought in subjective bad faith" and "the litigation is objectively baseless") *abrogated by Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1751.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

Here, the totality of circumstances suggests that Action Star litigated the instant case in an unreasonable manner. On July 18, 2013, Kaijet served interrogatories and requests for production seeking all facts and support for Action Star's contention that Kaijet infringes the 535 Patent. (Koppelman Decl. Exs. K, L.) Kaijet served additional requests for production on November 5, 2013, requesting "all documents and things" relating to Action Star's infringement claim. (Koppelman Decl. Ex. M, at 10–12.) Action Star's response did not contain any evidence of direct or indirect infringement. (Koppelman Decl. Exs. P, Q.) On December 4, 2013, Kaijet's counsel notified Action Star of the discovery response's deficiencies in a meet and confer letter. (Koppelman Decl. ¶ 21.) Three days later, Action Star's counsel responded stating that information on direct infringement was actually in Kaijet's control and that Action Star had "*no further responsive information to provide*." (Koppelman Decl. Ex. S) (emphasis added). Action Star disproved this representation three months later when it produced the Youtube video print-outs and the Andy Lee's declaration in opposition to Kaijet's motion for summary judgment.

Counsel for Action Star states that he did not inform Kaijet of the existence of the Youtube videos due to a "lack of communication between counsel and client." (Jeff Lee Decl. ¶ 49.) This lack of communication, however, does not excuse Action Star from its discovery obligations. *See PeerMusic, III, Ltd. v. LiveUniverse, Inc.*, 2011 WL 672585, at *9 (C.D. Cal. Jan. 26, 2011) (explaining that sanctions are appropriate when a party fails to produce relevant documents during discovery); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 221–23 (S.D.N.Y. 2003) (sanctioning counsel for representing that all responsive documents had been produced without "any real reflection or concern" for their discovery obligations and noting the "complete disconnect between counsel . . . and [client]"). Action Star never supplemented its discovery responses, as it was required to do under the Federal Rules, even though Action Star knew of the Youtube videos almost a year before the close of discovery.[6] *See* Fed. R. Civ. P. 26(e); (Dkt. No. 56-6, ¶ 4.) "Parties are entitled to rely on the accuracy and completeness of the discovery produced, and they are bound by a duty to supplement or correct disclosures when additional, material evidence is

---

[6] Andy Lee, employee of Action Star, became aware of the Youtube videos "at least by early 2013." (Dkt. No. 56-6, ¶ 4.) Ching-Wei Cheng, inventor of the 535 Patent, became aware of the Youtube videos "around mid-year 2012." (Dkt. No. 56-7, ¶ 9.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

available." *Coleman v. Hartford Life Ins. Co.*, 432 F. Supp. 2d 1030, 1033 (C.D. Cal. 2006). Action Star had access to these Youtube videos since before Action Star even filed the instant case, failed to produce the Youtube videos in response to discovery requests calling for the production of all documents and things supporting Action Star's infringement contentions, represented to Kaijet's counsel that no such evidence existed, and tendered them for the first time in opposition to Kaijet's Motion for Summary Judgment.

Notably, counsel for Action Star does not specify what reasonable investigation he undertook before unqualifiedly representing to Kaijet that all responsive information had been produced. *Cf. Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 WL 2758571, at *20 (C.D. Cal. Sep. 18, 2007) (stating that Rule 26 requires counsel to "make a reasonable investigation and effort to certify that the client has provided all information and documents available to it which are responsive to a discovery request"). Parties have a discovery obligation to conduct a reasonable search for responsive documents from all custodians from whom the parties have a legal right to obtain documents. *See MGA Entm't, Inc. v. Nat'l Prods. Ltd.*, 2012 WL 182158, at *10–11 (C.D. Cal. Jan. 23, 2012). Where a party fails to provide information or witness, as required by Rule 26, that party is not allowed to use the information or witness to supply evidence on a motion or at a hearing. *See Lehman Bros. Holdings, Inc. v. California Fin. Grp.*, 2011 WL 4375724, at *4 (C.D. Cal. Apr. 25, 2011).

Action Star attempts to justify its use of the previously withheld Youtube video printouts by stating that it utilized the printouts only as a "defensive" use. (Jeff Lee Decl. ¶ 51.) Action Star, however, cites no authority allowing a party to use previously withheld information for "defense" in an opposition to summary judgment. Action Star also attempts to justify its use of the declaration of previously withheld witness Andy Lee by stating that it did not originally plan to rely on Andy Lee's declaration testimony. (Jeff Lee Decl. ¶ 29.) Action Star's original plan, however, is not important given that Action Star actually did rely on it in opposing summary judgment. *See Milham v. United Air Lines, Inc.*, 2001 WL 36097433, at *1–2 (C.D. Cal. May 4, 2001) (imposing sanctions for party's failure to produce relevant, requested documents and witnesses until after discovery).

A0029

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

Due to the unreasonable manner in which the instant case was litigated, the Court finds the case to be "exceptional." As such, the Court GRANTS KaiJet's request for attorneys' fees under 35 U.S.C. § 285.

**C. Reasonableness of Attorneys' Fees Under 35 U.S.C. § 285**

The district court assesses the amount of an award under Section 285 at its own discretion. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). Awards under § 285 are meant to "compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (citation omitted). Thus, attorneys' fees under § 285 "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Id.* at 757. Fees charged for the time of paralegals and other support staff are also recoverable. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989); *Tehrani v. Hamilton Med., Inc.*, 2001 U.S. Dist. LEXIS 26067, at *8 (C.D. Cal. Dec. 19, 2001) ("Under *Jenkins*, the cost of support staff is recoverable as a part of reasonable attorneys [sic] fees" under 35 U.S.C. § 285). Fees incurred in preparing and litigating the motion for attorneys' fees are likewise recoverable. *See Microstrategy Inc. v. Crystal Decisions, Inc.*, 586 F. Supp. 2d 262, 262 (D. Del. 2008) ("Awards under § 285 include 'the fee for the reasonable time expended in preparing the elaborate fee application and briefs filed herein.'"); *see also Caron v. Lifestyle Crafts, LLC*, 2013 WL 791287, at *3 (D. Ariz. Mar. 4, 2013) (awarding fees for preparation of fee motion under § 285); *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1200–01 (E.D. Pa. 1990) (awarding fees incurred by attorneys and paralegals in preparing the fee petition under Section 285). A reasonable award of attorneys' fees pursuant to § 285 must be supported "'by adequate findings of the basis for the award,' including consideration of 'the number of hours worked by specific attorneys.'" *Intamin, Ltd. v. Magnetar Tech. Corp.*, 2009 WL 5215393, at *1 (C.D. Cal. Dec. 28, 2009) (quoting *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 674 (Fed. Cir. 1988)).

After reviewing the attorneys' fees submitted by KaiJet (Dkt. No. 100-7), the Court reduces the requested amount to what the Court believes to be reasonable. The Court then applies the 15%, across-the-board reduction (to which KaiJet itself agrees) to the Court-edited amount, due to Kaijet's block billing and in order to compensate for any inefficiencies of litigation. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-08074 BRO (MRWx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

2007) ("The district court imposed an across-the-board reduction of 20 percent on
Welch's requested total hours because Kantor & Kantor chose to block bill some of its
time rather than itemize each task individually. The court arrived at its 20 percent
reduction based on a report by the California State Bar's Committee on Mandatory Fee
Arbitration, which concluded that block billing may increase time by 10% to 30%.")
(internal quotation marks omitted).

| Hour Category | Dollar Amount Originally Sought by Kaijet | Dollar Amount Deducted by Court | Final Dollar Amount Awarded by Court |
|---|---|---|---|
| Responding to Action Star's Complaint | $ 5,788.50 | $ 773.50 | $ 5,015.00 |
| Procedural Filings and Hearings with Court | $ 7,080.00 | $ 6,663.50 | $ 416.50 |
| Propounding and Responding to Discovery | $ 63,508.00 | $ - | $ 63,508.00 |
| Opening Claim Construction Brief | $ 75,016.50 | $ - | $ 75,016.50 |
| Response Claim Construction Brief | $ 16,054.00 | $ 391.00 | $ 15,663.00 |
| Claim Construction Hearing | $ 33,493.50 | $ 11,338.50 | $ 22,155.00 |
| Supplemental Brief on Indefiniteness | $ 20,821.50 | $ 6,283.50 | $ 14,538.00 |
| Mediation/Settlement | $ 13,858.00 | $ 13,858.00 | $ - |
| Objection to Untimely Barker Report/Oppose Ex Parte Application to Modify Scheduling Order | $ 26,966.00 | $ - | $ 26,966.00 |
| Kaijet's Motion for Summary Judgment | $ 82,712.00 | $ 18,536.50 | $ 64,175.50 |
| Reply Brief in Support of Summary Judgment Motion | $ 50,498.00 | $ 13,486.00 | $ 37,012.00 |
| Supplemental Brief in Support of Summary Judgment Motion | $ 16,558.50 | $ 3,219.50 | $ 13,339.00 |
| Hearing on Summary Judgment Motion | $ 25,186.00 | $ 6,771.00 | $ 18,415.00 |
| Proposed Judgment and Stipulated Dismissal of Counterclaims | $ 5,042.50 | $ 1,374.50 | $ 3,668.00 |
| Kaijet Motion for Attorneys' Fees | $ 90,663.50 | $ 21,268.00 | $ 69,395.50 |
| Communications with Client/General Case Management | $ 19,762.50 | $ 19,110.50 | $ 652.00 |
| **Subtotal** | **$ 553,009.00** | **$ 123,074.00** | **$ 429,935.00** |
| **FINAL TOTAL (After 15% Reduction)** | | | **$ 365,444.75** |

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 12-08074 BRO (MRWx)** | Date | July 7, 2014 |
|---|---|---|---|
| Title | ACTION STAR ENTERPRISE v. KAIJET TECHNOLOGY INTERNATIONAL | | |

## IV.   CONCLUSION

In sum, the Court has considered sanctions under 28 U.S.C. § 1927 and 35 U.S.C. § 285 and hereby DENIES sanctions under Section 1927 and GRANTS attorneys' fees under Section 285.  Due to the unreasonable manner in which the instant case was litigated, the Court deems the circumstances of the case to be "exceptional," and therefore worthy of a fee award under § 285.

**IT IS SO ORDERED.**

                                                                                    :

Initials of Preparer    rf

A0032

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Action Star Enterprise, Co., Ltd.<br><br>                  Plaintiff,<br><br>v.<br><br>KaiJet Technology International,<br>Limited, and DOES 1 to 10,<br><br>                  Defendants. | Case No. 2:12-CV-08074-BRO-MRW<br><br>**JUDGMENT FOR ATTORNEYS' FEES** |

1    On April 18, 2014, this Court granted summary judgment in favor of KaiJet
2  Technology International, Limited  as to Plaintiff Action Star Enterprise Co., Ltd.'s
3  entire action.

4    On July 7, 2014, this Court awarded Defendant KaiJet Technology
5  International, Limited  $365,444.75 in attorneys' fees against Plaintiff Action Star
6  Enterprise Co., Ltd.

7    IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

8    Judgment for attorneys' fees in the amount of $365,444.75 is entered in favor
9  of Defendant KaiJet Technology International, Limited and against Plaintiff Action
10  Star Enterprise Co., Ltd.

11
12
13  SIGNED on this 11th  day of July 2014
14
15
16  _____
17  Honorable Beverly Reid O'Connell
    UNITED STATES DISTRICT JUDGE
18
19
20
21
22
23
24
25
26
27
28

-1-
JUDGMENT FOR ATTORNEYS' FEES          Case No. 2:12-CV-08074-BRO-MRW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

     I HEREBY CERTIFY that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this __ day of July 2014.

                                       _/s/ Ryan W. Koppelman_____
                                       Ryan W. Koppelman

-2-



US008099535B2

(12) **United States Patent**
  Cheng

(10) Patent No.: **US 8,099,535 B2**
(45) Date of Patent:    **Jan. 17, 2012**

(54) **METHOD FOR CONVERTING A KVM SYSTEM**

(75) Inventor: **Ching-Wei Cheng**, Keelung (TW)

(73) Assignee: **Action Star Enterprise, Co. Ltd.**, Taipei (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 16 days.

(21) Appl. No.: **12/544,228**

(22) Filed: **Aug. 20, 2009**

(65) **Prior Publication Data**
  US 2010/0064075 A1    Mar. 11, 2010

**Related U.S. Application Data**

(60) Provisional application No. 61/095,390, filed on Sep. 9, 2008.

(51) **Int. Cl.**
  *G06F 13/12*    (2006.01)
(52) **U.S. Cl.** ........................................... **710/62**; 710/73
(58) **Field of Classification Search** .............. 710/36–38, 710/51, 62, 63, 72–73; 345/157–158, 163, 345/167, 173
  See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,295,051 B1 * | 9/2001 | Kanevsky et al. | ............. 345/163 |
| 6,708,228 B1 * | 3/2004 | Meyers et al. | ................... 710/5 |
| 7,240,111 B2 * | 7/2007 | VanHarlingen et al. | ...... 709/224 |
| 7,545,361 B2 * | 6/2009 | Erickson | ....................... 345/156 |
| 2006/0146491 A1 * | 7/2006 | Chen | ....................... 361/683 |
| 2007/0257883 A1 * | 11/2007 | Ke | ........................... 345/157 |
| 2008/0307119 A1 * | 12/2008 | Huang | ....................... 710/18 |
| 2009/0077282 A1 * | 3/2009 | Hsueh | ....................... 710/63 |

* cited by examiner

*Primary Examiner* — Chun-Kuan Lee
*Assistant Examiner* — David Martinez

(57) **ABSTRACT**

A method for converting a KVM system comprising the steps of: (1) initializing a mouse device, at least two computer hosts, a keyboard, and at least two corresponding displaying device; (2) selecting which computer host and a corresponding displaying device are needed to be operated, then switching to the selected computer host and the corresponding displaying device by controlling a switch disposed on the mouse into a particular direction; (3) operating the selected computer host and the corresponding displaying device; (4) finishing the operation; (5) judging whether one of the computer hosts and another corresponding displaying device is needed to be operated, if yes, going to step (2), if no, going to next step; and (6) end.

**10 Claims, 2 Drawing Sheets**





Initializing a mouse device, at least two computer hosts, a keyboard, and at least two corresponding displaying devices
S1
judging whether a computer host and a corresponding displaying device are needed to be operated, wherein the computer host and the corresponding device are being connected to the mouse device and the keyboard
S2
yes
operating the computer host and the corresponding displaying device
S3
no
judging whether a first computer host is needed to be operated
S4
yes
no
S5
controlling a switch disposed on the mouse into a first particular direction corresponding to the use of the first computer host
S7
judging whether a second computer host is needed to be operated
yes
controlling the switch disposed on the mouse into a second particular direction corresponding to the use of the second computer host
S8
no
S10
continuing the steps of judging whether a third computer host, a fourth computer host or other computer hosts, the steps being the same logic as the steps of (4) to (10)
operating the first computer host
S6
operating the second computer host
S9
finishing the operation
S11
judging whether one of the computer hosts and another corresponding displaying device is needed to be operated
yes
S12
no
end
S13

Fig. 1



Initializing a mouse device, at least two computer hosts, a keyboard, and a displaying device
S20
S21
judging whether a computer host is needed to be operated, wherein the computer host is being connected to the mouse device, the keyboard and the displaying device
yes
S22
operating the computer host
no
S23
judging whether a first computer host is needed to be operated
yes
no
S24
controlling a switch disposed on the mouse into a first particular direction corresponding to the use of the first computer host
S26
judging whether a second computer host is needed to be operated
yes
controlling the switch disposed on the mouse into a second particular direction corresponding to the use of the second computer host
S27
S29
no
continuing the steps of judging whether a third computer host, a fourth computer host or other computer hosts, the steps being the same logic as the steps of (4) to (10)
operating the first computer host
S25
S28
operating the second computer host
finishing the operation
S30
yes
judging whether one of the computer hosts is needed to be operated
S31
no
end
S32

Fig. 2

US 8,099,535 B2

1

# METHOD FOR CONVERTING A KVM SYSTEM

## CROSS REFERENCE TO RELTED APPLICATIONS

This application claims priority from a U.S. Provisional Patent Application Ser. No. 61/095,390 filed Sep. 9, 2008, the entire content of which is incorporated herein by reference.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention generally relates to a method for converting a keyboard/video/mouse (KVM) or a keyboard/mouse (KM) system, more particularly to a method which uses a switching and mouse device to interface in a KVM or KM system.

2. Description of the Prior Art

In the field of a prior KVM system, some basic devices are included. The devices are at least one converter, at least two computer hosts, a keyboard, at least two corresponding displaying device. Hence, while a user interfaces between the two computer hosts, the converter is the role of switching different operation frames of the computer hosts. So that the user must use the converter before changing the operation frames. Obviously, the procedures are complicate and lots of electrical lines should be connected to such devices. Therefore, a terrible mess happens due to the electric lines. For solving problems above, a keyboard/video/mouse (KVM) switch is a device that is generally connected to multiple computers in order to enable a single keyboard, video monitor and mouse to control each of the connected computers. In this way, a user may have access to multiple computers without having to invest in corresponding keyboards, monitors, and mice for each of the computers for reducing the electrical lines. Similarly, a keyboard/mouse (KM) switch can also reduce the electrical lines.

No matter the KVM switch or KM switch, there are two ways for switching the control right from one computer host to another. The first way is to activate a button disposed on the KVM/KM switch for hardware switching the control right; the second way is to move the cursor on the corresponding displaying device to a particular icon for software switching the control right. However, in the first way, users should move their sights to find the button disposed on the KVM/KM switch and activate it for hardware switching the control right. If users need to switch the control right frequently, it's not convenient for use. In the second way, the particular icon is too small to click accurately. Users may click on other icons adjacent to the particular icon because the cursor does not align on the particular icon.

It is desirable, therefore, to provide a method for converting KVM/KM system that has an intuitive user interface to allow for switching the control right of plurality computer hosts easily.

## SUMMARY OF THE INVENTION

The primary objective of the present invention is to provide a method for converting a KVM/KM system. The method is to use a mouse with a switching function in order to switch a KVM/KM system. That is, the whole steps for converting the KVM/KM system will be reduced, and the whole devices of the KVM/KM system will be reduced either, so that an operator will be easier to have conversions among the devices of the KVM system.

2

A method for converting a KVM system comprising the steps of: (1) initializing a mouse device, at least two computer hosts, a keyboard, and at least two corresponding displaying device; (2) selecting which computer host and a corresponding displaying device are needed to be operated, then switching to the selected computer host and the corresponding displaying device through the switching and mouse device by controlling a switch disposed on the mouse into a particular direction; (3) operating the selected computer host and the corresponding displaying device; (4) finishing the operation; (5) judging whether one of the computer hosts and another corresponding displaying device is needed to be operated, if yes, going to step (2), if no, going to next step; and (6) end.

Another method for converting a KM system comprising the steps of: (1) initializing a mouse device, at least two computer hosts, a keyboard, and a displaying device; (2) selecting which computer host is needed to be operated, then switching to the selected computer host through the switching and mouse device by controlling a switch disposed on the mouse into a particular direction; (3) operating the selected computer host; (4) finishing the operation; (5) judging whether one of the computer hosts is needed to be operated, if yes, going to step (2), if no, going to next step; and (6) end.

Other and further features, advantages and benefits of the invention will become apparent in the following description taken in conjunction with the following drawings. It is to be understood that the foregoing general description and following detailed description are exemplary and explanatory but are not to be restrictive of the invention. The accompanying drawings are incorporated in and constitute a part of this application and, together with the description, serve to explain the principles of the invention in general terms. Like numerals refer to like parts throughout the disclosure.

The details and technology of the present invention are described below with reference to the accompanying drawings:

## BRIEF DESCRIPTION OF THE DRAWINGS

The objects, spirits, and advantages of the preferred embodiments of the present invention will be readily understood by the accompanying drawings and detailed descriptions, wherein:

FIG. **1** illustrates a flow chart of the method for converting a KVM system of the present invention.

FIG. **2** illustrates a flow chart of the method for converting a KM system of the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With reference to FIG. **1**, which illustrates a flow chart of the method for converting a KVM system of the present invention. The method includes following steps: Initializing a switching and mouse device, at least two computer hosts, a keyboard, and at least two corresponding displaying devices (S**1**). Video signals from the two computer hosts will be displayed on the corresponding displaying devices, respectively. An operator can control one of the computer hosts from the switching and mouse device, the keyboard and the corresponding displaying device. The operator is then judging whether a computer host and a corresponding displaying device are needed to be operated, wherein the computer host and the corresponding displaying device are being connected to the switching and mouse device and the keyboard (S**2**). If one computer host and a corresponding displaying device are needed to be operated, the operator can continuously operate

US 8,099,535 B2

**3**

the computer host and the corresponding displaying device. After finishing the operating, it goes to step (S11). If none of the computer hosts needed to be operated, then going to step (S10). The method will then judge whether a first computer host is needed to be operated (S4), if yes, going to step (S5), if no, going to step (S7). Step (S5) controls a switch disposed on the mouse into a first particular direction corresponding to the use of the first computer host, and the operator can operate the first computer host (S6), then going to step (S11). Step (S7) judges whether a second computer host is needed to be operated, if yes, going to step (S8), if no, going to step (S10). Step (S8) controls the switch disposed on the mouse into a second particular direction corresponding to the use of the second computer host, and the operator can operate the second computer host (S9), then going to step (S11). Step (S10) is to continue the steps of judging whether a third computer host, a fourth computer host, or other computer hosts, the steps being the same logic as the steps of (S4) to (S10), then going to step (S11). Step (S11) is to finish the operation. Step (S12) judges whether one of the computer hosts and another corresponding displaying device is needed to be operated, if yes, going to step (S4), if no, going to step (13). Step (S13) is the end.

Moreover, the switch disposed on the mouse is a scrolling ball, a scrolling reel or a scrolling plate for change the direction by the operator.

The operator can control the direction of the switch disposed on the mouse for controlling which computer host and corresponding displaying device will be controlled by the mouse and keyboard.

With reference to FIG. 2, which illustrates a flow chart of the method for converting a KM system of the present invention. The method includes following steps: Initializing a switching and mouse device, at least two computer hosts, a keyboard, and a displaying device (S20). Video signals from the two computer hosts will be displayed on the displaying device. An operator can control one of the computer hosts from the switching and mouse device, the keyboard and the displaying device. The operator is then judging whether a computer host is needed to be operated, wherein the computer host is being connected to the switching and mouse device, the keyboard and the displaying device (S21). If one computer host is needed to be operated, then continuously operating the computer host. After finishing the operating, it goes to step (S30). If none of the computer hosts needed to be operated, then going to step (S29). The method then will judge whether a first computer host is needed to be operated (S23), if yes, going to step (S24), if no, going to step (S26). Step (S24) controls a switch disposed on the mouse into a first particular direction corresponding to the use of the first computer host (S25), then going to step (S30). Step (S26) judges whether a second computer host is needed to be operated, if yes, going to step (S27), if no, going to step (S29). Step (S27) controls the switch disposed on the mouse into a second particular direction corresponding to the use of the second computer host (S28), then going to step (S30). Step (S30) is to continue the steps of judging whether a third computer host, a fourth computer host, or other computer hosts, the steps being the same logic as the steps of (S23) to (S29), then going to step (S30). Step (S30) is to finish the operation. Step (S31) judges whether one of the computer hosts is needed to be operated, if yes, going to step (S23), if no, going to step (32). Step (S32) is the end.

**4**

Moreover, the switch disposed on the mouse is a scrolling ball, a scrolling reel or a scrolling plate for change the direction by the operator.

The operator can control the direction of the switch disposed on the mouse for controlling which computer host will be controlled by the mouse, the keyboard and the displaying device.

The present invention discloses a concept of using a mouse with a switching function in order to switch a KVM system, which has a mouse device with a switch, at least two computer hosts, a keyboard, and at least two corresponding displaying device. It is to benefit a user who is operating the KVM system. The present invention further discloses a concept of using a mouse with a switching function in order to switch a KM system, which has a mouse device with a switch, at least two computer hosts, a keyboard, and a displaying device. It is also to benefit a user who is operating the KM system.

No matter a KVM system or a KM system, it is easy to change the direction disposed on the mouse for converting the control right of a plurality computer hosts. For an operator speaking, converting the control right of a plurality computer hosts will be no longer complicated or lousy.

Although this invention has been disclosed and illustrated with reference to particular embodiments, the principles involved are susceptible for use in numerous other embodiments that will be apparent to persons skilled in the art. This invention is, therefore, to be limited only as indicated by the scope of the appended claims.

What is claimed is:

1. A method for converting a KVM system comprising the steps of:

(1) initializing a mouse device, at least two computer hosts, a keyboard, and at least two corresponding displaying devices;

(2) selecting which computer host and a corresponding displaying device are needed to be operated, then switching to the selected computer host and the corresponding displaying device by controlling a switch disposed on the mouse into a particular direction; wherein step (2) further comprises the steps of:

(2A) judging whether a first computer host is needed to be operated, if yes, going to step (2B), if no, going to step (2D);

(2B) controlling the switch disposed on the mouse into a first direction corresponding to the use of the first computer host;

(2C) operating the first computer host, then going to step (4);

(2D) judging whether a second computer host is needed to be operated, if yes, going to step (2E), if no, going to step (2G);

(2E) controlling the switch disposed on the mouse into a second direction corresponding to the use of the second computer host;

(2F) operating the second computer host, then going to step (4); and

(2G) continuing the steps of judging whether a third computer host, a fourth computer host, or other computer hosts, the steps being the same logic as the steps of (2A) to (2F), then going to step (4);

(3) operating the selected computer host and the corresponding displaying device;

(4) finishing the operation;

(5) judging whether one of the computer hosts and another corresponding displaying device is needed to be operated, if yes, going to step (2), if no, going to next step; and

(6) end.

5

6

**2**. The method for converting the KVM system according to claim **1**, wherein one step can be added between step (2) and step (3) and is that of:

(1A) judging whether a computer host and a corresponding displaying device are needed to be operated, wherein the computer host and the corresponding displaying device are being connected to the mouse device and the keyboard, if yes, going to next step, if no, going to step (2); and

(1B) continuously operating the computer host and the corresponding displaying device, and then going to step (4).

**3**. The method for converting the KVM system according to claim **1**, wherein the switch disposed on the mouse is a scrolling ball.

**4**. The method for converting the KVM system according to claim **1**, wherein the switch disposed on the mouse is a scrolling reel.

**5**. The method for converting the KVM system according to claim **1**, wherein the switch disposed on the mouse is a scrolling plate.

**6**. A method for converting a KM system comprising the steps of:

(1) initializing a mouse device, at least two computer hosts, a keyboard, and a displaying device;

(2) selecting which computer host is needed to be operated, then switching to the selected computer host by controlling a switch disposed on the mouse into a particular direction; wherein step (2) further comprises the steps of:

(2A) judging whether a first computer host is needed to be operated, if yes, going to step (2B), if no, going to step (2D);

(2B) controlling the switch disposed on the mouse into a first direction corresponding to the use of the first computer host;

(2C) operating the first computer host, then going to step (4);

(2D) judging whether a second computer host is needed to be operated, if yes, going to step (2E), if no, going to step (2G);

(2E) controlling the switch disposed on the mouse into a second direction corresponding to the use of the second computer host;

(2F) operating the second computer host, then going to step (4); and

(2G) continuing the steps of judging whether a third computer host, a fourth computer host, or other computer hosts, the steps being the same logic as the steps of (2A) to (2F), then going to step (4);

(3) operating the selected computer host;

(4) finishing the operation;

(5) judging whether one of the computer hosts is needed to be operated, if yes, going to step (2), if no, going to next step; and

(6) end.

**7**. The method for converting the KM system according to claim **6**, wherein one step can be added between step (2) and step (3) and is that of:

(1A) judging whether a computer host is needed to be operated, wherein the computer host is being connected to the mouse device, the keyboard and the displaying device, if yes, going to next step, if no, going to step (2); and

(1B) continuously operating the computer host, and then going to step (4).

**8**. The method for converting the KM system according to claim **6**, wherein the switch disposed on the mouse is a scrolling ball.

**9**. The method for converting the KM system according to claim **6**, wherein the switch disposed on the mouse is a scrolling reel.

**10**. The method for converting the KM system according to claim **6**, wherein the switch disposed on the mouse is a scrolling plate.

\* \* \* \* \*